THE DELAWARE & HUDSON CANAL COMPANY v. ELY C. ROBERTS.

*Pleading—Notice of recoupment—Contract.*

1. A notice of recoupment ought to be as specific as a declaration.
2. In this case it is held that no legal contract was made out by defendant, and that there was nothing for the jury to pass on by way of recoupment.

Error to Lapeer. (Moore, J.)  Argued October 11, 1888. Decided October 19, 1888.

*Assumpsit.*  Plaintiff brings error.  Reversed.  The facts are stated in the opinion.

72 MICH.—4.

*Kohler & Bentley* and *W. W. Stickney*, for appellant.
*Geer & Williams*, for defendant.

CAMPBELL, J. Plaintiff sued defendant for two car-loads of coal ordered by him in January, 1887, by two written orders, which contained only directions to forward, by one, two cars nut coal, and by the other, one car nut coal.

Defendant admitted the receipt of the coal as claimed, but disputed the price. He also claimed that in July, 1886, he had made a contract with plaintiff for 43 car-loads, at $3.65 a ton for egg and $3.90 for nut coal, to be shipped as he should order it during the season of 1886–87, and that plaintiff had refused to carry it out; and he sought to recoup damages. The plaintiff's claim was for $122.25 and interest. The jury gave defendant a verdict of $232.70 by way of recoupment.

Plaintiff brings error on the ground that no such contract existed, and none was shown.

We think there was nothing to authorize any such verdict, and that plaintiff should have recovered the full amount claimed. The contract set up in the notice of recoupment, which ought to be as specific as a declaration, gives no date or place or other distinct description except in these words:

"A special contract or agreement, made and entered into by and between the said plaintiff and the said defendant in July, 1886, by the terms of which the said plaintiff did sell and agree to deliver to said defendant 43 car-loads of coal at $3.65 and $3.90 per gross ton, respectively for egg and nut coal, to be shipped to said defendant as he might order the same during the season of 1886–87."

By the established rules of pleading such an averment means such a contract as would be valid in law, and in this case, therefore, means a contract such as is

contemplated by the statute of frauds; and that statute requires all material parts of a contract to be expressed in a signed writing. This would require the consideration on both sides, which would involve, as stated in this alleged contract, an agreement to sell and an agreement to buy and pay the price. Such is the purport of the notice of recoupment, if it means anything.

There was no proof of any written contract in any way corresponding to that set forth, and no proof of a parol contract and delivery under it of such a nature as to take it out of the statute. There was proof that whatever was to be done was decidedly different.

Defendant's story is that on July 14, 1886, he visited plaintiff's office in Buffalo, N. Y., and had a talk with Mr. Mace, whom he found in the office, and Mr. Mace said plaintiff would furnish defendant coal free on board cars at $3.90 gross ton for nut and stove and $3.65 for egg coal; that defendant told him he wanted 15 cars of nut, 15 cars of No. 4, 12 cars of egg, and one car Pardee's Lehigh,—that was to be $6.20. This Pardee coal is not involved in the case; but it creates a variance from the notice, which speaks only of egg and nut coal, not referring to No. 4, and which does not undertake to aver how much of each kind was to be furnished, or what kinds and amounts plaintiff failed to furnish. The testimony is not very much more satisfactory.

Defendant claims to have made at the time some sort of a memorandum, but it was not complete, and was not shown to Mace, who made no memorandum or entry himself. Defendant undertook to swear that he did, but on cross-examination admitted he knew nothing about it. Defendant also said it was understood he wanted to order through the season, as he should want it.

He swore, however, further, as follows:

"I did not see Mr. Mace that day, but I told him

I would write them when I got home whether I would accept his proposition or not, and when I got home I did write him."

On cross-examination, after mentioning the number of cars he proposed to order, he says:

" I did not tell Mr. Mace that would be my order, nor did he accept my order that day. He made me a proposition to sell me the coal for this price, and I was to let him know if I accepted this proposition. He made me the proposition, and I afterwards accepted it by letter."

Apart from all questions of Mace's authority to contract, of which it is difficult to find sufficient proof, there can be no claim that when defendant was in Buffalo there was any contract whatever. The utmost that could be set up was that there was a preliminary conversation which did not bind defendant to anything, and which therefore did not bind plaintiff. Had plaintiff thereafter entirely refused to make a contract, apart from any statute of frauds, defendant would have had no legal grievance.

It is not claimed that there was ever any written contract. The letter which defendant wrote to plaintiff soon after his return home in July, 1886, and which is the only assumed basis for the claim of recoupment, is not urged as making out any case except as an acceptance of the parol proposition. But in fact it was followed by a letter from plaintiff putting matters on a different footing. This letter he found no fault with, and did not answer. He claims that his subsequent orders were in reliance on the earlier arrangement, and admits he did not answer it. He says:

" After I received the letter of July 26, I did not answer it at all. I had already got through making bargains. I proposed to hold them to the 15 cars No. 4, if I wanted it. There wasn't any acceptance to be made. I didn't answer them at all."

The letter which defendant wrote after his return home July 24, 1886, was as follows:

"LAPEER, MICH., July 24, 1886.

"DEL. & HUDSON CANAL CO.,

"Buffalo,

"*Gentlemen:* You may enter my order for 15 cars nut, 15 cars No. 4, 12 cars egg, and one car Pardee Lehigh nut; coal to be clean, bright, and free from slate, etc. Do not ship any before September, and I will then say how fast I want it shipped. I called at your office on the 14th of this month, and got prices. I am warranting this coal as good as the best.

"Yours truly, E. C. ROBERTS."

Immediately after this, and on July 26, 1886, Mr. McWilliams, who was the general agent at Buffalo,—Mr. Mace being a traveling agent, with limited powers,—answered it. After acknowledging receipt, he proceeds:

"I am very much afraid that we will not be able to give you 15 cars of No. 4, as that size is always scarce; and as you stipulate that none shall be shipped before September, I regard it as extremely doubtful if we will be able to get that quantity that month, if any. If you will make the order for 7 cars of No. 4, and 8 of stove, we would think the chances better for filling it. Our stove coal generally runs very small, as we leave most of the No. 4 in it. I think that if you will try the stove, it will answer nearly as well as the No. 4. As I remember it, you want the coal shipped on the Mich. Central road, and in Sept. and Oct. Mich. Cent. cars always become scarce, and we may not be able to ship as fast as you will want. If you have any storage room it might be well for you to take in a little coal in August, but of course you will do as you think best. However, the No. 4 will have to be shipped whenever we can get it; but we hope that you will conclude to get along with 7 cars, and a few cars of stove. .

"Yours truly,

"R. E. McWILLIAMS, S. & S. A."

As already stated, defendant never answered or made any reference to this letter. He made orders which were filled from time to time. On December 4 he ordered a

car of chestnut to be shipped to E. F. Freeman, Port Huron, which on December 9 was declined, because they had arrangements at Port Huron to ship to only their regular dealer. In this same letter defendant was informed they canceled the balance of his unfilled order, because the agent, Mr. Mace, said he sold so many cars to be shipped to Lapeer in September and October.

On December 11, 1886, defendant wrote for the first time, setting out what he claimed to have been his contract with Mr. Mace. This was at once answered by a denial of any authority in Mr. Mace to make such a contract. Mr. McWilliams communicated with Mr. Mace, who replied that he gave defendant figures on what coal he could use to November 1, but defendant gave no order or acceptance of prices, and said he would think of it, and probably send in his order by mail; that the letter of July 24 ordered 43 cars, and the only acceptance of it was the letter of July 26, which objected to the large proportion of No. 4 size, and designated September and October as the times when coal was to be shipped. Mace denied any other contract. This was communicated to defendant at once, on December 31. On that same day plaintiff declined to fill an order for No. 4 coal as not obtainable. Defendant was informed by the same letter that the plaintiff's prices for coal were $4.90 for stove and chestnut, and $4.65 for grate and egg; subject to change without notice.

On the 12th and 14th of January, 1887, defendant ordered the coal sued for in this case, and made no reference to the former correspondence.

From all this it appears that before ordering any coal to be forwarded, defendant—whether there had been any previous understanding or not—was informed that plaintiff did not expect to furnish the coal of the kind or quality which he now asserts should have been furnished, and the letter

of July 26 is inconsistent with any recognition of such an existing contract. If he claimed differently he was called on without delay to say so. He never said so until December, and his claim was at once repudiated. There was never, therefore, any delivery or shipment on the terms of the alleged parol contract, if it existed, so as to take it out of the statute. But according to defendant's own oath there never was any complete parol contract, and the letters are necessary to make out any agreement according to his own showing, and the letter of July 26 is not consistent with what defendant claims.

It was not important in the circuit court to ask instructions upon the statute of frauds directly, because no contract was shown to have existed in any shape. But the charges asked in regard to the necessity of a meeting of minds, and the effect of the various letters, and acquiescence in their undenied claims, all had a direct statutory bearing, and indicated sufficiently the plaintiff's claim that no contract could be made out except by means of the letters, which failed to do it.

Without, therefore, referring in detail to the errors assigned, we think no legal contract was made out, and there was nothing for the jury to pass on by way of recoupment. We think plaintiff was entitled to recover the January price of the coal furnished, which was $122.25.

Judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.