## DETROIT RIVER TRANSIT CO. *v.* ALDRICH.

1. PLEADING—BREACH OF CONTRACT—COMMON COUNTS.
   Damages for breach of contract are not recoverable under the common counts.

2. SAME—DEFENSES; NOTICE OF—RECOUPMENT—PLEA.
   In giving special notice of defense for breach of an alleged contract, defendant must set up the terms of the contract as in a declaration: it is insufficient to refer to plaintiff's declaration on the common counts by an averment that "plaintiff failed and neglected to perform the contract upon which this suit is brought," etc., since no special contract is alleged in the declaration.

3. CONTRACTS—BREACH—DEMAND.
   Where no opportunity was afforded by defendant to plaintiff to fulfill a contract to deliver gravel which defendant claimed plaintiff failed to perform, and defendant made no demand for performance, he was not entitled to recoup damages for an alleged breach, in an action for a balance remaining unpaid under the agreement.

4. SAME—VOLUNTARY PAYMENT—BONUS.
   Nor could defendant recover a voluntary payment made to one of plaintiff's employees as a gratuity or bonus for expediting the delivery of the gravel.

5. EVIDENCE—CONCLUSIONS—AGREEMENT.
   Where the issue between the parties related to the amount to be paid for a quantity of gravel, and plaintiff's agent had testified at considerable length with reference to a conversation with defendant, in which the latter wanted plaintiff to furnish the gravel at 45 cents a yard, and plaintiff's agent refused to do so, the witness afterwards stating that he remembered defendant agreed to pay 50 cents a yard, there was no error in refusing to strike out the testimony of the witness as a conclusion.

6. SAME—VALUE.
   Evidence of dealings with other parties by plaintiff, and the price paid by them at different times and under different conditions from those existing at the execution of the contract, was not erroneously excluded.

Error to Wayne; Codd, J. Submitted June 5, 1913. (Docket No. 33.) Decided July 9, 1913.

Assumpsit by the Detroit River Transit Company against Byron S. Aldrich for gravel sold and delivered to defendant. Judgment for plaintiff. Defendant brings error. Affirmed.

*James Swan,* for appellant.

*Anderson & Wilcox,* for appellee.

Steere, C. J. This is an action in assumpsit, in which plaintiff recovered against defendant, in the circuit court of Wayne county, on May 25, 1911, a judgment in the sum of $580.59, being a balance claimed due on a quantity of gravel sold and delivered to defendant. Plaintiff declared on the common counts in assumpsit, serving a bill of particulars, showing amounts, date of delivery, and price of a quantity of gravel furnished defendant, amounting to $5,984.60 and payments credited on same amounting to $5,429.08, leaving a balance in plaintiff's favor of $555.52. Defendant pleaded the general issue with notice of set-off and recoupment, claiming a balance due him for overpayments on their general account of $179, and also a further sum of $1,177 damages for failure to deliver, according to contract, 2,354 yards of gravel, serving a bill of particulars which showed payments to plaintiff of $5,466.01 and credits for gravel delivered amounting to $5,286.40. The case was tried before a jury in the circuit court, resulting in a verdict in favor of plaintiff as stated, and defendant has removed the proceedings to this court under various assignments of error as to the admission and rejection of testimony and charge of the court. At the time of the dealings between these parties which resulted in this litigation, plaintiff, a Michigan corporation, was the owner of certain boats

carrying gravel from the "Middle Grounds" at Port Huron, and in that connection was generally engaged in transporting and selling gravel, sand and coal in and around Detroit, its active man in control, and manager, being a Mr. Beecher. Defendant was a supply contractor, also engaged in the sand and gravel business in the city of Detroit. In the summer of 1909 some improvements were being made in connection with the Detroit waterworks, in which bids were to be received for a quantity of gravel. Beecher and defendant both contemplated bidding on the same, and for mutual protection, each against the other, and both against possible outside competitors, they agreed that Beecher should put in a bid of 57 cents per yard and defendant Aldrich a bid of 55 cents per yard, and, if defendant got the contract, plaintiff was to deliver the gravel at the waterworks. Aldrich testified that after this amicable adjustment he became suspicious Beecher was going to "double-cross" him, and as a precaution against such perfidy put in a bid at 54 cents. When the bids were opened, it was found Beecher had bid 55 cents and Aldrich had gone him one cent better, or worse, as the case may be, and secured the contract. Negotiations were then entered into for further co-operation, which resulted in an oral agreement, the terms of which are in dispute. Prior to this, during the same summer, plaintiff had sold defendant several boat loads of gravel, to be delivered on the Detroit river at the Solvay dock at 45 cents per yard.

Defendant testified that he and Beecher discussed the amount required to fill the contract, the specifications calling for 11,000 yards with option for an additional 15 per cent., and it was agreed that plaintiff should deliver the same at 45 cents per yard; that the first load was delivered September 28th, and between that time and the 1st day of November only four loads

had been delivered; that the waterworks people were "hounding" him for faster deliveries, and he complained to Beecher about it, who assured him there need be no worry, as it would all be put in on time. Following this, owing to plaintiff's delay in delivery, defendant procured two boat loads of gravel from other parties, and when Beecher ascertained this he protested, requesting defendant not to get any more gravel from other parties, stating he had agreed to fill this contract, and guaranteed he would do so; but at the close of navigation there was a shortage on the contract of 2,354 yards. Defendant also testified that Beecher was ignorant of the management of boats of that character, and, owing to mismanagement and delays, defendant interviewed a man named Hickey who was a member of the crew of one of plaintiff's boats, and promised him that, if the work was done as it should be, he would personally pay him $25 extra, as a result of which the boat was handled in a better manner and he paid Hickey as promised; that in talking with Beecher afterwards about the better work being done defendant told him the reason why, and said that he thought Beecher should reimburse him. To the question, "What did he say?" defendant answered: "I don't remember just what he said. I can't swear that he said that he would."

Beecher testified that it was more difficult and expensive to deliver gravel at the waterworks than at the Solvay dock, and he positively refused to deliver any gravel to the waterworks at 45 cents a yard as defendant wished him to do, but asked 50 cents per yard; that he refused to undertake to deliver any definite amount even at that price, stating as the reason that he had other customers to supply, but, if defendant wished, he would deliver for defendant on his contract with the waterworks all that plaintiff was able to at 50 cents per yard, to which defendant finally agreed.

The record shows that plaintiff commenced delivering on September 29, 1909, and made the last delivery on December 7, 1909. At the end of each month duplicate invoices were rendered defendant, showing date and number of yards of gravel delivered, and price per yard. Defendant paid on the accounts from time to time, making no objection to the invoice price. He testified that during this time, and when making such payments, he did not notice the price per yard stated in the invoices, and had no knowledge that plaintiff was claiming more than the 45 cents per yard. Nine thousand four hundred and sixty-five yards of gravel were delivered at the waterworks by plaintiff. On December 7th Detroit river froze over, and navigation closed. Defendant paid $3,711.40 on this account prior to the close of navigation and $1,717.68 later. After the close of navigation, defendant received a notice from the board of water commissioners that 15 per cent. increase in the amount of gravel was desired; the contract giving the board that option. Defendant did not communicate this fact to plaintiff, or request him to make additional deliveries after receiving this notice.

The issues presented by the pleadings and testimony were: The price of the gravel, whether 50 cents or 45 cents per yard; whether defendant had received 82 yards less gravel than plaintiff claimed in deliveries of September 6th and 23d, and had not received a claimed shipment of October 28th, amounting to 429 yards; some small items in regard to screening gravel, phone charges, etc., and the $25 paid to Hickey; also defendant's claim of recoupment for breach of contract sued upon by reason of plaintiff's failure to deliver an additional 2,354 yards.

On the trial the court took from consideration of the jury the $25 item as being a voluntary payment, or bonus, to an employee, made by defendant, for

which plaintiff had in no way become responsible, and defendant's claim of recoupment for failure to deliver additional gravel, instructing the jury as follows:

"There is also in this case a claim on the part of the defendant for damages by reason of the alleged breach of the contract on the theory that in September of that year the plaintiff in this case agreed to deliver all gravel needed at the waterworks dock. In that connection I charge you that there is no testimony in the case, even if there was such a contract, as to the breach thereof. There is no testimony in this case showing any demand made upon the plaintiff for the performance of the balance of that contract, and no opportunity given to him to furnish whatever may have been necessary under said contract, if there were such a contract. Therefore, in view of the fact that there has been no demand and no opportunity given to the plaintiff to fulfill such a contract, if there was one, there can be no recovery for such and you will eliminate it from your consideration."

Whether or not there was a contract to deliver any specific amount of gravel would be an issue of fact for the jury if properly presented by the pleadings, inasmuch as defendant testified that plaintiff agreed to furnish the full amount required by the waterworks contract, and Beecher positively denied it. Plaintiff does not declare expressly upon any contract. Its declaration is only on the common counts, and contains no special count for breach of a contract. Its bill of particulars is for a quantity of gravel sold and delivered at a certain price per yard. It could not recover damages for a breach of contract under the common counts. *Hamilton* v. *Frothingham*, 59 Mich. 253 (26 N. W. 486). Defendant's plea is the general issue with notice, so far as this question is involved, that—

"Plaintiff neglected and failed to perform its part of the contract upon which this suit is brought by failure to deliver 2,354 yards of gravel as it was re-

quired to do to complete the contract made and entered into between the parties hereto, and that by reason of the failure to perform said contract in full the said defendant suffered a loss," etc.

Recoupment is, in its nature, a cross-action for damages, an affirmative defense in relation to which the defendant is, in effect, plaintiff and may recover a money verdict in his favor if his claim exceeds plaintiff's demand. Such claim must be properly pleaded, as in a declaration. Were the contract under which recoupment is claimed pleaded in plaintiff's declaration, defendant might make it a part of his plea, or special notice, by apt reference, but here defendant refers to "the contract upon which this suit is brought" when none is pleaded by plaintiff, and fails to set out and properly describe in his notice the special contract upon which he relies. Defendant is relying upon a contract which plaintiff not only does not plead, but in fact denies. Though it need not be as formal as a declaration, it ought, nevertheless, to be equally specific. *Bolt* v. *Friederick,* 56 Mich. 20 (22 N. W. 187) ; *Watkins* v. *Ford,* 69 Mich. 357 (37 N. W. 300) ; *Delaware & Hudson Canal Co.* v. *Roberts,* 72 Mich. 49 (40 N. W. 53). A plea or notice which sets up a breach of contract in support of a claim of recoupment should be as distinct and unambiguous as if suing directly for breach of contract.

Aside from this infirmity, defendant's evidence does not sustain his claim of breach. He admitted that up to the close of navigation what gravel the water board wanted was delivered by plaintiff.

"*Q.* So, when the last load of gravel was delivered on December 7th, so far as you knew at the time that is all the gravel they wanted?"

"*A.* Yes; I think so, I think you are right about that."

Later he received notice that an additional 15 per

cent. was desired. He made no further demand on plaintiff for more gravel. His reason is that it would do no good, for plaintiff had sold its boats, and could not furnish it. Beecher testified plaintiff had boats in 1910, but, be that as it may, the court correctly stated "there was no demand and no opportunity given to the plaintiff to fulfill such contract, if there was one." There was no error in the charge of the court upon that subject.

This view disposes of defendant's third assignment of error, which relates to the rejection of certain testimony claimed to have bearing upon the measure of damages under his notice of recoupment.

The court was also correct in instructing the jury that there was no legal obligation resting upon plaintiff to reimburse defendant for the $25 paid Hickey. It was a voluntary payment made by defendant to one of plaintiff's employees, without plaintiff's knowledge or consent, to advance work in which defendant was interested and primarily for his own interest. There is no testimony that Beecher, when informed of it, agreed for plaintiff to pay it, and defendant himself says, "I can't swear that he said he would." No legal liability was established, and the court properly withdrew the item from the consideration of the jury.

The three remaining assignments of error discussed in defendant's brief relate to the admission and rejection of testimony. Witness Beecher was asked by plaintiff's counsel "whether or not Mr. Aldrich agreed to pay you 50 cents for the gravel," and answered, "I am quite certain he did." The answer was stricken out on motion of defendant's counsel, and witness was then asked, "Q. Do you know whether or not he did?" to which witness answered, against the objection that it was calling for a conclusion, "Yes," afterwards stating, "I remember distinctly that he agreed to pay 50 cents." This is but a fragment of the extended

testimony of this witness upon that subject. The facts were gone into fully by both parties relative to their conversations, disputes, understanding, and agreement as to price, and each was fully cross-examined. Beecher testified positively that defendant wanted him to furnish gravel for the waterworks at 45 cents. He refused positively, stated it was in the fall, and demands were large; that he could get 50 cents, and, if he furnished defendant any, it must be at that price, and defendant then said, "Go ahead." In view of his testimony on the subject, taken as a whole, we see no force in the contention that the answers objected to should be rejected as conclusions.

On cross-examination the court permitted counsel to inquire fully of Beecher as to all his dealings with defendant, including previous sales to him at 45 cents, but sustained objection to going into dealings with other parties as immaterial. Defendant assigns this as error on the ground that it was competent to show the "running price for that season." Both parties claimed a specific agreement as to the price per yard for gravel to be delivered at a certain place towards the close of the season. We do not think the price paid by other parties for gravel delivered at other places competent evidence of what this contract was, or as having sufficient, if any, bearing upon the understanding of the parties to open that field of inquiry. It was shown and conceded that earlier in the season plaintiff had sold defendant himself gravel delivered at another dock for a less price than the contract price claimed by plaintiff for the waterworks delivery.

On cross-examination defendant's counsel asked witness Beecher: "Now, what experience did you have in handling boats like the Shores prior to the purchase by you?" Objection to this as immaterial was sustained, and the ruling is assigned as error. It

is claimed "this class of testimony was very material to show the incompetence of plaintiff as a reason why delivery to the full amount was not made." This being the purpose, it goes to the question of recoupment, which we have already discussed, and need not be considered further.

We think the court allowed abundant latitude in the examination of witnesses as to the material issues of fact in the case, and submitted such issues to the jury with a very plain, full, and correct charge as to the rules of law involved and the duty of the jury in passing upon the facts.

The judgment is affirmed.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.