PEOPLE, for use of H. HOUGHTON & SONS, v. TRAVES.

1. COMPROMISE AND SETTLEMENT — CONTRACTS — PRINCIPAL AND SURETY—EVIDENCE—DEBTOR AND CREDITOR.

Where a contractor, engaged in constructing a public building, became financially involved, and, at a meeting of his creditors, offered to give 3-year notes for his various accounts and some of the creditors or their representatives were not present, but others who were at the meeting expressed their willingness to grant the request if all would join in doing so, there was insufficient evidence to entitle the debtor's surety on his construction bond to a directed verdict upon the ground of a compromise and extension of time.

2. SAME — EVIDENCE — TRIAL — STRIKING OUT TESTIMONY — CONCLUSION OF WITNESS.

The testimony of defendant that, when he had made a proposition to his creditors, at a meeting, to give them 3-year notes for his indebtedness, they agreed to it, was incompetent as proof of their consent and the trial court did not err in striking from the record that part of his statement relating to the alleged agreement, as a conclusion, where he afterwards admitted that some of his creditors were not present and that he was not sure that one of those who was present expressed his consent.

3. SAME—ACCEPTANCE—CONCLUSIONS.

Nor was it erroneous to strike out the testimony of an-

other witness who was at the alleged meeting of creditors and stated that he went away with the impression that everybody present at the meeting would accept defendant's proposition, and that most of the creditors seemed to be satisfied; the court granting an opportunity to counsel. to show what the actual facts were and what took place.

4. EVIDENCE—SALES—DELIVERY—ADMISSIONS.

Plaintiff sold to defendant Traves a quantity of material for use in the construction of a schoolhouse and upon the trial offered in evidence delivery slips signed by the defendant, also books of account showing the amount due. Defendant's counsel admitted that the receipts which bore defendant's name were correct and might be received.' Proof was made as to plaintiff's method of sale and delivery and the method of keeping track of the same. There was testimony tending to show that regular statements of account were made to Traves without objection and plaintiff's auditor testified to the sending of the statements to defendant. *Held*, that such testimony, with other proof having a tendency to show the claims of plaintiff, was admissible and presented a question for the jury, in a suit on defendant's construction bond to which the contractor and surety were both parties.

5. SAME—PRESUMPTIONS—DELIVERY.

Proof tending to show that the material for building was ordered by the contractor and delivered at the place of construction, with evidence that the contractor gave his notes without objection, for the price, and that monthly statements of account were rendered by the vendor to the buyer, who made no complaint as to their correctness, was evidence of the correctness of plaintiff's claim and that the material was used for contract purposes, in a suit against him and his surety on the construction bond.

6. PRINCIPAL AND SURETY — EXTENSION OF TIME — RELEASE OF SURETY—BILLS AND NOTES.

The acceptance by the vendor of the notes of said contractor, which the former discounted to obtain credit or funds, did not release the surety unless it suffered prejudice by the extension: nor did payment of interest or the addition thereof to the renewal notes operate as a release, where the surety was paid for its services and suffered no injury by the action.

7. SAME—DISCHARGE OF LIABILITY.

The rule of *strictissimi juris* does not usually apply to the undertakings of a surety company, acting for a compensation; but if a material variance in the contract is disclosed, the surety may be held discharged.

Error to Wayne; Mandell, J. Submitted April 28, 1915. (Docket No. 150.) Decided September 29, 1915.

Assumpsit by the People of the State of Michigan for the use of H. Houghton & Sons, a corporation, against William H. Traves and the Fidelity & Deposit Company of Maryland, a foreign corporation, upon a construction bond. Judgment for plaintiff. Defendants bring error. Affirmed.

*Donnelly, Lyster, Brennan & Munro,* for appellants.

*Selling & Brand,* for appellee.

STEERE, J. On May 26, 1910, defendant Traves contracted with the board of education of the city of Detroit to do the mason work, and furnish material for the same, in the construction of the Cass high school building, to be erected at the intersection of Grand River and Second avenues, in the city of Detroit. On the same date he furnished a bond to said board, in form required by Act No. 187, Pub. Acts 1905, to pay subcontractors, wages earned, for material used, etc., executed by himself as principal and the Fidelity & Deposit Company of Maryland, a foreign corporation, the other defendant herein, as surety. This action is brought against Traves and his surety by and in behalf of H. Houghton & Sons to recover the purchase price of sand, cement, stone, and other material furnished to Traves and used by him in the construction of the said building. It is conceded that said bond was within the corporate power of the Fidelity & Deposit Company to execute and assume,

and that it was duly executed in prescribed form according to the provisions of the statute requiring a bond in such cases.

Plaintiff claims to have furnished Traves building material of different kinds as required for his contract, and used by him in the construction of said schoolhouse, delivered upon the premises between October 30, 1910, and November 1, 1911, except one small delivery made January 3, 1911. It is shown that in the course of their dealings plaintiff from time to time received from Traves, for the material supplied him, short-time notes running from 30 to 90 days, their dates extending over a period from June 22, 1911, to March 20, 1913. This action was begun August 5, 1913. Traves fell into difficulties and became financially embarrassed before the completion of his contract, being unable to meet his obligations when they fell due, or later.

In January, 1912, shortly after the last material was furnished by plaintiff, a meeting of Traves and some of his creditors was held in plaintiff's office, when he solicited of them an extension of time in which to re-establish his business and meet his indebtedness. It is claimed by defendants that plaintiff, through its authorized officials, co-operating with other creditors, agreed to the requested extension, and accepted a note in full of its account payable in three years. This is denied by plaintiff's officials, who claim that the proposal was not generally accepted by Traves' creditors, nor by plaintiff, and his note payable in three years was declined, word being sent to him that only short-time notes for his indebtedness would be accepted, after which he executed and furnished short-time notes to plaintiff for what he owed it.

The trial court submitted to the jury as an issue of fact, under proper instructions, the question whether plaintiff did, in January, 1912, extend to Traves time

of payment for three years as defendants claimed. This question was decided against defendants' contention. The only other issue submitted to the jury was whether the material, as claimed by plaintiff, was actually furnished by it to Traves and used by him in the high school building under his contract. The jury also found for plaintiff upon this issue and rendered a verdict in its favor against defendants for the sum of $3,573.33, for which judgment was entered accordingly.

At the conclusion of plaintiff's testimony, and again after both parties rested their case, counsel for the Fidelity & Deposit Company, defendant, moved the court for a directed verdict in its favor on the grounds that no delivery or use of the material such as would hold it as a surety had been proven, because there was no evidence of what material was furnished by plaintiff to Traves or used by him in the building; that plaintiff's books were not properly proven; and that extension of time in which to pay, as shown, granted without knowledge or consent of the surety on the bond, operated to release it. These motions were denied.

Defendants' counsel concentrate their numerous assignments of error into four different grounds for reversal, as follows: "Exclusion of evidence; books of account; admissions of Traves; extension of time."

Defendants' claim that the surety was released by extension of time arose under two heads or lines of testimony—one that plaintiff took short-time notes from Traves and renewals of the same during a period of approximately a year and a quarter after the account became due; and the other that it consented to an extension of time for three years and accepted in payment a note running for that length of time. The first proposition was disposed of by the court in plaintiff's favor as a question of law. The second, as before

stated, was submitted to the jury as an issue of fact, with the direction that, if they found from the evidence plaintiff did agree to extend the time for three years, it could not maintain this action, and their verdict must be for the defendant surety.

Without reviewing the testimony relating to the latter question at length, it is sufficient to say that it clearly involved an issue of fact for the jury. This issue was raised by special notice added to defendants' plea of the general issue, alleging that at a meeting of Traves' creditors held on or about January, 1912:

"It was mutually agreed that said creditors and each of them, including the above-named corporation, H. Houghton & Sons, should accept the promissory notes of said William H. Traves payable three years from date and in full payment of their respective debts and accounts, and that said creditors, including said H. Houghton & Sons, each in consideration of the fact that the others should and did accept said promissory notes, accepted said notes as aforesaid; that the note so accepted by said H. Houghton & Sons was not due or payable at the time that this suit was brought or is the same now due and payable."

It is conceded that at this meeting Traves asked for an extension of time, offering his creditors three-year notes; that some of the creditors or their representatives, including plaintiff, expressed a willingness to grant the request if all the creditors would join in doing so. It is clearly shown that all the creditors did not consent, a number not being present at the meeting nor represented; in fact, one of the largest creditors was not present nor shown to have at any time been asked for an extension, and later recovered a judgment for its claim in the Wayne county circuit court. The testimony of several witnesses was introduced as to what took place at this meeting. No witness testified directly that plaintiff agreed unconditionally to an extension. During his examination Traves testified to

what he proposed, concluding with the general statement, "And they agreed to it." This, on plaintiff's motion, was stricken out. Error is assigned on this ruling under *Detroit River Transit Co.* v. *Aldrich,* 176 Mich. 357 (142 N. W. 373). In that case it was held not reversible error to permit an answer to the question "whether or not Mr. Aldrich agreed to pay you 50 cents for the gravel." The witness answered: "Yes; I remember distinctly he agreed to pay 50 cents." This was in relation to a conversation between two individuals, one of whom was the witness being interrogated, and was but a fragment of his testimony as to a deal between them in which the facts were fully gone into on both sides, by direct and cross examination. The witness was giving the substance of what a particular person said to him. Under these circumstances no prejudicial error calling for a reversal was found. In the instant case the facts in relation to this meeting were also fully gone into by direct and cross examination. Traves was given full opportunity to relate all that occurred, tell what any particular person said, who agreed to his proposition, and in what manner. He by his own testimony negatived, and in effect struck out, this answer, by stating that a number of his creditors were not present or represented, that he did not know that a Mr. Wolff, who was present and afterwards absolutely refused, ever opened his mouth at the meeting, that he could not tell exactly what anybody did say, but from what those who spoke said he "took it for granted they all agreed." We find no error in the court striking out this omnibus, general statement that "they agreed to it," when the witness himself shows that all did not, and testifies that he simply took it for granted.

A witness named Daigle, who was present representing a creditor, said:

"All I can remember hearing was that Mr. Traves

got up and made this speech. I did not hear what the other people said."

And he further testified that:

He "went away from there with the impression that everybody there would accept this condition that he put forth; * * * that most of the people and I would accept the condition; * * * most of the people seemed to be satisfied with that."

The latter testimony was stricken out, the court saying in part:

"What satisfied you of that? * * * How—by words or looks or actions, or what? * * * You said you came to the conclusion that certain persons who were there understood certain things; what was it that influenced you in drawing that conclusion? In the meantime the testimony concerning that may be stricken out; all testimony concerning an impression or conclusion of the witness may be stricken out."

The distinction between opinion and fact as applied to his case being correctly stated by the court as follows:

"A lot of men get together and talk back and forth, and that talk must form a basis for any contractual relations between the parties, and if that talk was not given, no contractual relations can be had. Some words must be given as a basis for some impression or conclusion."

Full opportunity was granted the witness to tell what was said and in what manner the consent, of which he had an impression, was expressed. Under such circumstances we see little force in the assignment of error upon this ruling.

Counsel for defendant say in their brief:

"To prove the receipt, by Traves, of the material for the price of which the suit was brought, the plaintiff relied upon its books of account, and upon certain admissions by Traves as hereinafter described," both

of which are claimed to have been erroneously admitted.

If the evidence of delivery, receipt, and use of the material sought to be recovered for was confined to plaintiff's books and proof of admissions by Traves, these objections might call for more serious consideration; but we think the record discloses much more. To establish its *prima facie* case plaintiff produced but two witnesses, one to prove the bond, and the other, George Harkness, who became manager and auditor for plaintiff after the delivery of this material, but was familiar with its books, files, business methods, and records. He produced in court its books, slips for delivery of this material, invoices, etc. These were numerous and voluminous. There were 664 delivery slips, the majority signed by Traves himself and some signed by his authorized employees. When these were offered in evidence counsel for defendant said:

"You offer them to show the material shown in the slips were delivered to him?"

And, being answered in the affirmative, they conceded:

"That the material shown in certain of those slips was delivered and received by Mr. Traves, and at the job, namely, the ones that were receipted for by him, either his initials or his name, or the ones receipted for by three other persons who were authorized to receipt for him, their names being, as was stated by counsel, Roran, Wilson, and Pata."

After some further discussion and statement by plaintiff's counsel as to what further it was proposed to show in that connection, defendants' counsel said:

"We will admit in evidence without objection such ones of these slips as bear the receipt of Mr. Traves' name, or any one of the names I have mentioned, but as to the others that are not receipted, or that bear

the signature of some person—some other person—we object to their admission."

The slips receipted by others were few in number, and of small amount after March 11, 1911. Payments had been made which balanced Traves' account up to that date, and plaintiff only asked and recovered a verdict for material delivered at and used by the Cass high school building after that time. Credit was also given for $245.30 worth of cement sacks returned, not all of which were shown to have been received by Traves at this building. Harkness was examined and testified at length as to plaintiff's method of sale and delivery, showing, in brief, that when an order was received for material to be used at a certain place a delivery slip was made in triplicate, with carbon paper, one being given to the price clerk and entered upon the proper record with the price of each article, and two copies were taken by the teamster with the load of material, who gave one copy to the purchaser or his representative at the place of delivery and returned the other to the office receipted by the person receiving the goods. An invoice would also be made out at the office with a carbon copy, which was retained, the original being mailed the same day to the purchaser. Monthly statements were also sent to the purchaser showing the total of each day's delivery. Witness testified, under objection, that Traves' accounts, which were in court, contained an exact transcript of the delivery slips, which would be duplicates as priced by the pricing clerk, one being mailed to Traves, and one posted in the ledger. The court allowed the witness to state the result of an examination of the books on this matter, "because it appears from the books that they are very voluminous, and every opportunity will be given to defendant to examine them with regard to the items testified to," and to counsel's further objection "to proving by saying what is in the books"

repeated this in substance. Plaintiff's books were not formally offered and received in evidence in its main case, though after a full cross-examination of Harkness defendants' counsel offered the ledger account in evidence. Harkness also testified without objection that Traves made no objection to the monthly invoices and statements sent him.

Plaintiff claimed, and claims, that by proof of the receipt of this material "on the job" or at the place where the contract was being performed, it raised a presumption that it was used in the building and made out a *prima facie* case—citing *Rice & Floyd* v. *Hodge Bros.*, 26 Kan. 164, 171; *Morrison* v. *Hancock*, 40 Mo. 561, 565. In overruling defendants' motion for a directed verdict, when plaintiff rested, the court said:

"There is the evidence of the slips, evidence that the amounts stated in the slips are entered on the ledger, evidence that the ledger accounts were transcribed upon a bill, and that the bill was delivered monthly to Mr. Traves, and that settlement or conversations were had, and in none of them was the account disputed."

Counsel for the defendant surety company called Traves to the stand in its own behalf, and in the course of his direct and cross-examination he testified that he received monthly statements from plaintiff containing a memorandum of where the material was delivered, which also appeared in the daily invoices sent him; that when the material was delivered it was accompanied by a delivery slip describing the article, amount delivered, name of driver, and when delivered, followed by a daily invoice sent through the mail; that he checked the slips up with the daily invoice, and if any discrepancy appeared notified plaintiff's office, and it was corrected; that his monthly statements were always correct for material received up to the time of giving the notes for their value; that he was allowed

5 per cent. for cash, otherwise 30, 60, and 90 days' time; that the prices he was charged were correct; that he never had any material delivered at the high school building which was used on another job. Plaintiff then called its bookkeeper, who produced and identified the carbon duplicates of the invoices which were set out in its bill of particulars and testified to personally and correctly posting them into the ledger, and that monthly statements showing the transactions of the previous month, with any balance' over from the month before as appeared by the ledger, were promptly sent to Traves every month. While perhaps this testimony would more properly have been part of plaintiff's main case, we think, under the circumstances disclosed, it was a matter in the discretion of the court, and find no material error in admitting these accounts or the manner of submitting such testimony to the consideration of the jury under the condition of the evidence when both parties rested.

Upon Traves' so-called admissions counsel cite an abundance of authority sustaining the proposition that declarations and admissions of the principal to be admissible must be part of the *res gestæ,* and made during transaction of the business for which the surety was obligated to bind the latter. This would apply to objections interposed against the testimony of other witnesses as to statements or admissions made by Traves subsequent to the transaction, but not to the testimony of Traves himself when called by defendant as a witness in his own behalf. In such case his testimony under oath as to material facts is for the jury to weigh as that of any other witness. Neither is the surety, having called him, in a position to invoke the rule. Upon this the court charged the jury that:

"The recognition by Traves of the correctness of the charges against him and the giving of his note therefor established *prima facie* that the materials charged

against Traves as delivered at that site were actually received and used in the construction of the Cass high school."

It is urged that this was error, because such recognition by Traves could only apply to his indebtedness to plaintiff, and not to the amount of his indebtedness for material delivered and used in the job for which the other defendant was surety. Not only does delivery of suitable material at the place of performing the contract, as ordered, raise a presumption of its use for that purpose, in the absence of any proof to the contrary, under the authority cited, but Traves himself testified:

"I never had any material delivered at the Cass high school that was afterwards used in another job. It had to be used there."

We find no error in the admission of Traves' testimony or the instructions of the court in relation to it.

Upon the claim of the release of surety by extension of time in accepting short-time notes and renewals of the same, it is urged that the court should have directed a verdict in favor of the defendant bonding company, under the undisputed evidence, instead of directing the jury, as a matter of law, that the surety on the bond was not thereby released from its liability.

Traves testified that by their method of dealing 5 per cent. discount of monthly bills was allowed for cash or time given for 30, 60, or 90 days. He gave the notes, and, not paying them when due, they were renewed. It was shown that plaintiff, in the conduct of its business, secured credit, indorsing and discounting notes of its customers, instead of discounting its own notes. In discounting these notes interest was charged plaintiff, and in some cases interest was added in the renewals, and it is contended that the facts bring the case squarely within the rule stated in *People, for use of The C. H. Little Co., v. Grant,*

138 Mich. 60 (100 N. W. 1006). This may be conceded, with the marked exception, on which the dividing line is drawn by many courts, that in the *Little Case* the sureties, Archer and Porath, were natural individuals gratuitously signing Grant's bond for accommodation, while in the instant case the surety is an artificial person, a corporation, engaged in the business of becoming surety on bonds for profit. Of this distinction it is said:

"The trend of all our modern decisions, Federal and State, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of *strictissimi juris* prevails, as it always has; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance." *Young* v. *Bonding Co.,* 228 Pa. 373 (77 Atl. 623).

Defendant has not in its pleadings or proofs claimed or shown that it was in any manner prejudiced or actually harmed by the extension of time complained of. That payment of interest is not necessarily a controlling factor in this class of cases is determined by the decision in *Guarantee Co.* v. *Brick Co.,* 191 U. S. 416 (24 Sup. Ct. 142), where it appeared the materialman in whose behalf the action was brought had accepted short-time notes, drawing 10 per cent. interest, after the account had become due. It not appearing that the surety suffered any material harm thereby, the court held its bond was not released. This particular feature of the case has recently been considered and reviewed by our court in *People, for use of T. B. Townsend Brick, etc., Co.,* v. *Bowen,* 187 Mich. 257 (153 N. W. 672). We regard the principles there recognized as

applicable to the facts in this case, and controlling upon the question of extension of time.

For the foregoing reasons, we are constrained to conclude that the judgment of the lower court ought to be, and the same hereby is, affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.