## Johnston et al. *versus* Patterson.

1. Representations by the principal as to what the conditions of his bond are, made to one who is about becoming his surety on the same, in the absence of the obligee, and of which he had no notice, cannot be given in evidence against him to discharge the surety.

2. If a surety sign a bond which he is not prevented from reading by any trick or artifice of the obligee, without reading it or having it read to him, in ignorance of its contents, he cannot avoid his obligation on it because it is other than he thought it to be.

October 14th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. MERCUR, C. J., and GREEN, J., absent.

[Johnston v. Patterson.]

ERROR to the Court of Common Pleas of *Mercer county:* Of October Term, 1886, No. 122.

This was an action in debt brought by James Patterson against W. W. Jonhston, Money Miller and S. P. Johnston to recover damages alleged to have been sustained by him by reason of W. W. Johnston failing to carry out a contract with him in which Money Miller and S. P. Johnston were sureties.

On the trial before MEHARD, P. J., the defendants made the following offers of evidence which were overruled, exceptions noted, and bills sealed.

Defendants propose to show by the witness (W. W. Johnston) for and on behalf of the sureties and for their release that he, the witness, communicated to his bail, S. P. Johnston and Money Miller, the terms of the contract he had made with Mr. Patterson as to the time it was to run; to be followed by evidence that when they came to sign the contracts in the presence of Mr. Patterson, they were yet in blank, and that Mr. Patterson in the presence of the two sureties asked Mr. Johnston, " Do these men understand our contract? " and that Mr. Johnston replied, " Yes, I have told them what it is," and then Mr. Patterson replied, " We may as well sign them and they can be filled up afterwards," and that they, thereupon, did sign the contracts in blank and they were filled up afterwards in the absence of the sureties; and further that Money Miller, one of the sureties, can neither read English, nor sign his name in English.　　(First assignment of error.)

The defendants propose to prove by the witness, S. P. Johnston, one of the sureties on the contracts offered in evidence, that on the morning of the 7th day of July, the day the said contracts were signed, his brother William, who is the principal, the second party to said contracts, came to his place and solicited him to become a surety on the contracts to carry the mail that he had made with James Patterson, at the same time telling him that the time of the contract was to be for one year with the privilege of three; to be followed by testimony of the same witness that in the afternoon of the same day he came with his brother to the clerk's office in the court-house and there met Mr. Patterson, Mr. Money Miller, the other surety, and Mr. Madge and his brother who came with him, and that Mr. Patterson stated that the contracts were not yet ready, or prepared, and that as Mr. Miller was in a hurry to get home, they might be signed in blank, having first asked Mr. Johnston if the sureties (those gentlemen present) understood their contract, and in reply to Mr. Patterson's question, Mr. William Johnston stated, " Yes, I have told them what our contract is," and this for the purpose of reliev-

ing the sureties from the effect of the contract as it was afterwards filled up.     (Second assignment of error.)

Defendants propose to prove by the witness, Money Miller, one of the sureties on the contracts offered in evidence, that between ten and eleven o'clock on the morning of the 7th of July, the day the said contracts were signed, William W. Johnston, who is the principal, the second party to said contracts, came to his place and solicited him to become his surety on the contracts to carry the mail that he had made with Mr. James Patterson, at the same time telling him that the time of the contract was to be for one year with the privilege of three; to be followed with testimony of the same witness, that in the afternoon of the same day he came to the clerk's office in the court-house and there met Mr. Patterson, Mr. S. P. Johnston, the other surety, Mr. W. W. Johnston and Mr. Madge, and that Mr. Patterson stated that the contracts were not yet ready or prepared, and that as Mr. Miller was in a hurry to get home, they might be signed in blank, having first asked Mr. Johnston if the sureties (those gentlemen present) understood their contract, and in reply to Mr. Patterson's question, Mr. William Johnston stated, " I have told them what our contract is," and this for the purpose of relieving the sureties from the effect of the contracts, as they were afterwards filled up.     (Third assignment of error.)

The court charged the jury *inter alia* as follows, from which the facts of the case sufficiently appear.

It seems that in 1884, W. W. Johnston undertook to carry the United States mail upon two routes leading from Cadiz, Ohio, the one to Cambridge and the other to St. Clairsville; that the carrying of the mail had been undertaken by Mr. Patterson, the plaintiff in this case, and he sublet those contracts to W. W. Johnston, one of the defendants.   Mr. Johnston entered into writings agreeing to fulfill these contracts for carrying the mail, and bound himself, and gave as sureties in the same obligation the other two defendants, for the sum $3,000 in the two contracts; that is to say, $1,500 each.   The condition of the obligation was, substantially, that W. W. Johnston would faithfully fulfill his agreements with the plaintiff, Mr. Patterson.   It is not denied that the three defendants signed these writings which have been given in evidence.   It is also a conceded fact that in February of 1885, W. W. Johnston ceased to carry the mail, contrary to the stipulations made by him, as set forth in these writings.

This makes out for the plaintiff a *prima facie* case and entitles him to recover a verdict at your hands, unless other matters have been proven in the case which relieve the defendants from their obligation.

[Johnston v. Patterson.]

The defendants assert that they are not bound to pay the plaintiff any part of the damages claimed by him, for the reason that the plaintiff procured the execution of these written contracts by them fraudulently—first, that he deceived them, or deceived W. W. Johnston as to the nature of the roads or routes over which the mail was to be carried, and second because there was inserted in the writings a stipulation materially different from that which was agreed upon by the parties, and that the insertion was made in fraud of the defendants' rights. The evidence as to the first assertion or matter of defence is to the effect that prior to the time these writings were entered into, Mr. Patterson had represented to Mr. W. W. Johnston that the road from Cadiz to Cambridge was better than the road from Mercer to Sharon, and that the road from Cadiz to St. Clairsville was better than the road from Cadiz to Cambridge.

If the plaintiff in this case undertook to give to the defendant, W. W. Johnston, information regarding the routes which were the subject-matter of their contracts, it was his duty faithfully and honestly to state such information as he had. Or if he held himself out as knowing something which he did not know, and stated falsely material facts concerning that matter, that would be fraud of the defendants' rights.

But the defendants in this case undertake to defend against a written contract signed and sealed by them. In order to entitle them to this defence on the ground of fraud, they must prove the fraud clearly, precisely and indubitably.

[And while the evidence is not disputed by the plaintiff as to the representations which he did make as to the nature of those roads, the evidence on the behalf of the defendants does not show that material variation between the representations as made and the facts as they existed which we think would entitle us to submit the case to you upon that branch of the defence. The witnesses on behalf of the defendants have testified as to the character of the road from Cadiz, Ohio, to Cambridge and to St. Clairsville, but they have not shown that there is a material difference between the character of those roads and the road between Mercer and Sharon, or that the representation, as made, was made falsely or fraudulently in detriment of the defendants' rights. Therefore, gentlemen of the jury, you will leave that out of consideration, for you could not base your verdict upon it]. (Fourth assignment of error.)

The other branch of the defence is as to whether the rea-contract made between these parties was that the defendant W. W. Johnson should take these routes for one year on the

4 AMERMAN—26

terms agreed upon, with the privilege of three, or whether the contract was as set forth in the writings.

On behalf of the defendants you have the testimony of Mr. W. W. Johnson as to what took place between himself and Mr. Patterson in the presence of Mr. Harry in front of the post-office; you have the testimony of Mr. Harry upon that subject, and you also have the testimony of Mr. Money Miller and Mr. W. W. Johnson as to what occurred in the office of Mr. S. H. Miller after the time this suit was brought, and from all of this the defendants ask you to find that the agreement at the post-office was that W. W. Johnson was to take those routes for one year with the privilege of two more years, and that he could give the plaintiff thirty days notice before the expiration of the year, that he did not wish to have them for a longer time, and then be released from his contract.

On the other hand, the plaintiff denies that he made such an agreement at that time or any other time.

Your first inquiry will be whether that conversation took place and assumed the form of an agreement between the parties. If it did not, then the plaintiff would be entitled to recover his whole claim in this case. If it did, then you must proceed one step farther. [It is conceded that the agreement was not consummated at that time, but that it was consummated in the office of R. G. Madge on the same day but at a subsequent hour.]

\* \* \* \* \* \* \* \*

Now, it is your duty to recall the evidence of W. W. Johnson, of Money Miller, of S. P. Johnson, of Mr. Patterson and of Mr. Madge and judge of those men as they came before you. First, had they an opportunity of knowing the things they undertook to state? Did they show that they remembered them with that clearness and distinctness which would warrant you in believing that they did remember them? Did they show that they were stating fairly what they did remember? Was the substance of their story, their manner of telling it and the correspondence of their statements with the other proven facts in the case, as you may find them, such as to lead you to the conclusion that this witness or that witness was telling the truth?

Now, this is a material point in this case, and you should examine all the evidence bearing upon it with great care, and remembering the degree of proof which is required from the defendants to establish the fraud, you then must pass upon the question whether these writings were filled in or were in blank at the time they were signed by these parties. If they were in blank at that time, and if they set forth an agreement for three years when the agreement actually was for one with the

[Johnston v. Patterson.]

privilege of three, then the defendants would be entitled to relief from the burden of the two years which they do not elect to take. But, on the other hand, if you are not satisfied that the agreement was made in the first place for one year with the privilege of three, it would be immaterial whether the writings were filled up or not. [Or if you find that the writings were filled up when signed by the parties, then it would be immaterial whether the agreement had previously been made or not. For if the defendants failed to acquaint themselves with the true statement of that part of the contract, as contained in the writings, when they had an opportunity to do so and were not prevented from doing so by a trick or artifice of the plaintiff, and the defendant W. W. Johnson acted under that agreement for the length of time he states he did, he must be held and so must his sureties to an absolute waiver of whatever privilege he might have had under the first agreement. There would be no fraud upon the sureties aside from any fraud upon the principal, for Mr. Patterson had a right to suppose that the principal would protect his sureties by giving them all needed information; and the privilege which the defendants assert in this case was one which was peculiar to W. W. Johnson; the sureties had no right to elect one way or the other. The election that they claim to have had was an election to be made by W. W. Johnson, and if he waived it the sureties could not complain.] (Sixth assignment of error.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The plaintiff has submitted the following request for instruction:

"If the jury find from the evidence that the contracts in suit were filled out before they were signed, as sworn to by R. G. Madge, then they must be taken as contracts for three years, as they are written."

"I have given to you explicit instructions as to the effect of the signing of these papers if they were filled out at the time. They differ slightly from this request. The request is affirmed, as explained in the general charge. (Seventh assignment of error.)

Verdict for the plaintiff in the sum of $1,848.12 and judgment thereon, whereupon the defendants took this writ, assigning for error the rejection of their offers of evidence those portions of the charge included within brackets and the answer of the court to the plaintiff's point.

*S. Griffith & Sons*, (*B. Magoffin* with him,) for plaintiff in error.

*Gordon*, (*Miller* with him,) for defendant in error.

Mr. Justice PAXSON delivered the opinion of the Court, November 15th, 1886.

A careful examination of this record has failed to disclose any substantial error. The rejection of the offers of evidence referred to in the first three assignments is certainly not a just cause of complaint. What the witness (W. W. Johnson) told his bail, in the absence of the plaintiff, as to the nature of the contract they were about to sign, was not admissible to prove a fraud on the part of the plaintiff in filling up the blanks in said contract. While great liberality is allowed in proving fraud, the better opinion would seem to be that the fraud must be proved, not guessed at, and it must be proved by competent evidence.

It was not contended that the evidence referred to, had it been received, would have been sufficient to relieve the principal. It was offered in relief of the sureties. But surely the representations of the principal made to his sureties in the absence of the plaintiff, and of which it was not even alleged that he had notice, cannot be given in evidence against him in order to discharge the sureties. We need not discuss so plain a proposition ; it argues itself.

We do not see anything in those portions of the charge assigned as error which would justify a reversal. Complaint is made that the court withdrew from the jury the question of false representations in regard to the condition of the roads over which the mails were to be carried under the contract. If there was any evidence to justify a jury in finding the false representations referred to, we have not discovered it, and it has not been pointed out to us. And the court was literally accurate in the statement referred to in the fifth assignment. The consummation of the agreement meant its formal execution, and this occurred just when the court said it did.

If the sureties signed the contract in ignorance of its contents they cannot avoid it now in the absence of any fraud or deceit on the part of the plaintiff. If they did not read or have it read to them it was their own fault. They were not prevented from reading it by any trick or artifice of the plaintiff. It is true there is a line of cases which decide that when an illiterate man executes a writing which has been falsely read to him, he is not bound : Green *v.* North Buffalo Township, 56 Penn. St., 110 ; Schuylkill County *v.* Copley, 67 Id., 386. This is also the doctrine of Thoroughgood's case. While the rule laid down in these authorities is the undoubted law of this state they have no application to the facts of the case at bar.

Judgment affirmed.