## Donaldson, Appellant, v. Hartford Accident & Indemnity Co.

*Principal and surety—Bond—Joint and several bond—Delivery —Consideration—Surety company—Insurance—Subrogation.*

1. Untrue statements made by the principal debtor in a bond to the surety therein, will not operate to relieve the latter, if made without the knowledge of the obligee.

2. Where a bond is joint and several, the surety will be held liable even though the principal debtor does not sign it, or signs after the liability has accrued, especially if the principal debtor is primarily liable for the debt aside from the provisions of the bond, which contains also a clause entitling the surety to subrogation to the obligee's claim against the principal debtor.

3. A bond or other instrument in writing imposing liability, is delivered when it is deposited in the mail, directed to the obligee or to some one, other than the obligor's agent, to deliver it to the obligee.

4. Where the terms of an obligation are definitely agreed upon, either orally or by correspondence, and by reason thereof the obligee surrenders an existing bond which is received and retained by the obligor, the later bond will be binding upon the parties as of the time the minds met in regard to it though it is contemplated that thereafter it shall be put in writing and delivered to the obligee.

5. A party cannot receive and retain the consideration of a contract and yet claim to avoid liability on it.

6. Where an obligation is returned to a surety simply for the purpose of correcting a mistake therein, the consideration having been paid at the time it was entered into, the obligee is not bound to disclose to the surety information which he acquired after its execution.

7. A corporation issuing surety bonds for profit, is not relieved from liability by a variance from the contemplated method of performance unless such change is a material one.

8. Such a company, though called a surety company, is in effect an insurance company, with the liabilities appertaining thereto.

Argued January 20, 1921. Appeal, No. 247, Jan. T., 1921, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1919, No. 5675, on verdict for defendant, in case of Thomas B. Donaldson, Insurance Commissioner of Pennsylvania, as such statutory liquidator of Pittsburgh Life & Trust Co., dissolved, Assignee of Charles A. Ambler, Receiver of Pittsburgh Life & Trust Co., dissolved, v. Hartford Accident & Indemnity Co. Before Moschzisker, C. J., Walling, Simpson, Kephart and Sadler, JJ. Reversed.

Assumpsit on contract of suretyship. Before Stern, J. The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1-28) various instructions and rulings, and (29) refusal of plaintiff's motion for judgment n. o. v.

*Fred Taylor Pusey,* with him *G. Hamilton Colket, Bernard J. Myers,* Deputy Attorney General, and *George E. Alter,* Attorney General, for appellant.—The "new" bond, dated and mailed by the defendant July 17, 1919, was merely evidence of the contract theretofore definitely agreed upon between the parties, a mere compliance with the agreement to substitute in form a new contract identical with the former one as corrected by mutual consent and agreement: Lansdowne v. Electric L. & P. Co., 206 Pa. 188; Smith v. Kaufman, 30 Pa. Superior Ct. 265; Park v. Ry. Co., 58 Pa. Superior Ct. 425; Cosgrove v. Woodward, 49 Pa. Superior Ct. 228; Walker & Kavanaugh v. F. Ins. Co., 175 Pa. 345; Etter v. Ins. Co., 54 Pa. Superior Ct. 187; Benner v. Fire Assn. of Phila., 229 Pa. 75.

The validity of the contract of suretyship whether under the formal contract executed July 17, 1919, or the correspondence exchanged between the parties prior

thereto, was not affected by the failure of the bank to formally join as principal: Bradley v. Holleran, 59 Pa. Superior Ct. 1; Loew v. Stocker, 68 Pa. 226; Keyser v. Keen, 17 Pa. 327; Grim v. School Directors, 51 Pa. 219.

Assuming there was such fraud or concealment as would avoid an ordinary surety bond, the bond in suit is not thereby avoided as this bond is within the rule of Com. v. Jimison, 205 Pa. 367.

*G. W. Pepper,* with him *Thomas Stokes,* for appellee. —The bond of July 17th evidenced an undertaking distinct from that evidenced by the earlier bond, and such claim as the appellant has is based exclusively upon the later instrument: Roth v. Miller, 15 S. & R. 100.

As the obligee of the bond issued by the appellee on July 17, 1919, Ambler never had any rights whatever: Smalley v. Morris, 157 Pa. 349; McNeile v. Cridland, 168 Pa. 16.

Even if the bond was delivered it is void, because of concealment by Ambler of facts material to the risk: Wayne v. Commercial Nat. Bank, 52 Pa. 343; Bolz v. Stuhl, 4 Pa. Superior Ct. 52; Brewing Co. v. McLean, 15 Pa. Superior Ct. 38; Lauer Brewing Co. v. Riley, 195 Pa. 449; Park Paving Co. v. Kraft, 262 Pa. 178.

OPINION BY MR. JUSTICE SIMPSON, February 21, 1921:

On November 20, 1917, Charles A. Ambler, then being insurance commissioner of the Commonwealth of Pennsylvania, opened a savings fund account in the North Penn Bank of Philadelphia, in the name of "Charles A. Ambler, Receiver of the Pittsburgh Life and Trust Company, dissolved"; the moneys therein deposited being received and held by him virtute officii, the company to which they belonged having been dissolved, and its assets ordered to be collected and distributed, in accordance with the provisions of the Act of June 1, 1911, P. L. 599, later reënacted and extended by the Act of May 21, 1919, P. L. 209. As security for the payment of the de-

posits, Ambler held surety bonds, aggregating the sum of $225,000, given by the National Surety Company and certain officials of the bank.

On March 15, 1919, Thomas B. Donaldson became insurance commissioner in Ambler's place and stead. For some reason not appearing in the evidence,—but immaterial to the present controversy since it had no relation to the bank's ability to pay,—Donaldson preferred to have the account remain in Ambler's name and that the latter should liquidate it, all moneys received there-from to be paid, however, to him, Donaldson. At this time the amount due by the bank was $402,265.39 which was so far in excess of the surety bonds already given, that Ambler thought it wise to secure an additional bond in the sum of $100,000. This he requested the bank to furnish, and accordingly it asked the National Surety Company to give such additional bond; but, as that company felt it had as much liability in this matter as a wise business policy dictated, its agent requested the Hartford Accident and Indemnity Company, the defendant in this case, to take the risk, which the latter agreed to do, without requiring the usual written application to be made, provided only a five days' cancellation clause was inserted in the bond. This was assented to, the bond was thereupon issued on April 22, 1919, was delivered to Ambler on May 19, 1919, and he retained it until its redelivery to defendant as hereinafter set forth.

The bond was drawn (as requested by the bank) in favor of the "Insurance Commissioner of the Commonwealth of Pennsylvania (hereinafter called the depositor)"; recited that the "bank has been designated as a depository of certain moneys of the depositor or for the custody of which the depositor is or may be responsible," and made the bank, as principal, and defendant, as surety, "jointly and severally" liable upon the condition that if the bank, during the year beginning April 23, 1919, should "promptly account for and in due and ordinary course of business pay over on legal demand all

moneys deposited with it by or on behalf of said depositor, then this obligation to be null and void, otherwise to remain in full force and effect."

Subsequently, at the request of defendant, the bank sent a formal application for the bond. It contained several untrue statements; but since they were made after the issuing of the bond and without the knowledge of either Ambler or Donaldson, they cannot affect this controversy: Johnston v. Patterson, 114 Pa. 398; Kulp v. Brant, 162 Pa. 222, 226; Park Paving Co. v. Kraft, 262 Pa. 178.

Donaldson afterwards learned the bond had been issued in favor of the "Insurance Commissioner of the Commonwealth of Pennsylvania," and not in the name in which the bank account stood, and therefore requested Ambler to get the name on the bond changed so as to accord with the account. At the latter's request, the bank thereupon wrote a letter to defendant giving the title of the account and requesting that an endorsement be made on the bond so as to make it accord with the account. To this request, defendant (which, as its superintendent afterwards testified, did not care in whose favor the bond ran) replied that his company would rather not make the changes in the form of an endorsement, but, if the existing bond was returned, would "execute a new bond in accordance with the changes suggested." The bank thereupon obtained the bond from Ambler, and mailed it to defendant on July 15, 1919; the latter still retains it and has never offered to return it, and there is an admission in its paper-book "that the legal effect of the......correspondence between the bank and the surety was a contract to assume liability for Ambler's deposit in consideration of the surrender of the old bond for cancellation."

After banking hours on July 17, 1919, defendant mailed to the bank a letter acknowledging the receipt of the old bond and enclosing a new one, exactly in the form agreed upon, and these were received the next day

by a representative of the commissioner of banking, then in charge of the bank, and were by him handed to Ambler, who thereafter obtained the signatures of the bank officers on the bond, as principal therein named. On July 24, 1919, he assigned this bond, and also the account in the bank, to "Thomas B. Donaldson, Insurance Commissioner of the Commonwealth of Pennsylvania and as such Statutory Liquidator of the Pittsburgh Life and Trust Company, dissolved." Since the liability on each of the bonds was joint and several, and they were delivered without any condition as to the bank's signing as principal, it is immaterial when it signed, or if it signed at all: Loew v. Stocker, 68 Pa. 226; Whitaker v. Richards, 134 Pa. 191; Bradley v. Holleran, 59 Pa. Superior Ct. 1. Especially is this so where, as here, the bank is primarily liable because of the deposit account, and the bond contains a clause of subrogation: 21 Ruling Case Law 964.

In the meantime Ambler had withdrawn from the account certain sums of money, all by checks in favor of Donaldson as insurance commissioner, though the cashier of the bank claimed that, as it was a savings fund account, the bank was entitled to thirty days' notice of withdrawal. At various times the cashier requested that the account should not all be withdrawn at once, because, as he said, the bank was a small one and had subscribed to war loans in a very large amount; but he alleged it could and would pay it all if required so to do. On July 12, 1919, Ambler gave to Donaldson a $30,000 check drawn on the account. At this time a bank examiner was investigating the affairs of the bank,—as is periodically done in the case of all banks,—and the cashier requested this check should not be presented for a few days, because he wished the examiner's report to show a large amount of deposits. To this Donaldson assented, as was customary where banks were small and their war loans large. About noon of July 17, 1919, he and Ambler were advised, for the first time, that the

bank was having trouble with its clearances, and if the $30,000 check was presented for payment it would wreck the bank. So far as appears, until then, neither Ambler nor Donaldson had any fears of or suspicions regarding the ability of the bank to meet its obligations; and thereafter nothing could be done to liquidate the account, for, as a result of the bank examiner's report to the commissioner of banking on the evening of that day, the doors of the bank were ordered closed, a deputy commissioner of banking was put in charge, and its assets were subsequently ordered to be liquidated and distributed under the direction of the commissioner. Due notice of this was given to defendant.

In a charge which is a model of clearness, and must have been as readily understood by the jury as it is by us, the trial judge told them that the new bond became effective, if at all, as of the date of its mailing on July 17, 1919, that if they found Ambler at this time knew of the condition of the bank, it was his duty to disclose the fact to defendant, and if they believed the latter would not have delivered the bond had this fact been made known to it, they should find in its favor; otherwise they should find in favor of plaintiff in the sum of $56,597.05, which the parties agreed was the amount due. The jury rendered a verdict for defendant; plaintiff moved for a new trial and for judgment non obstante veredicto, both of which motions were dismissed, and this appeal followed.

We cannot assent to the judgment thus obtained, because the rules of law which govern the original undertaking of an individual surety are not applicable to the essentially different facts above set forth. If the first bond was still in force we would be constrained to hold that defendant was liable upon it. As already pointed out, it ran in favor of the insurance commissioner as "depositor," and covered all deposits "for the custody of which the depositor is or may be responsible." Donaldson, as insurance commissioner, was in law the equi-

table owner of the fund, at the time the first bond was given and always thereafter, though the deposit did not appear in his name, and, if defendant did not know this, it doubtless would have so learned had it chosen to make inquiry; but, as already stated, its superintendent testified it cared nothing about the name of the depositor because it insured the bank's acts no matter who was depositor. Moreover, Donaldson, as insurance commissioner, had a real interest in the deposit since "for the custody" of it by Ambler, he, Donaldson, was "responsible," and would have been held liable had Ambler embezzled the funds therein. In Young v. American Bonding Company, 228 Pa. 373, we said: "In all essential particulars the appellee here is an insurance company. ......The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business......'The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris, does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves "surety companies" their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee': 32 Cyc., p. 306, and the authorities there cited in support." Tested by this rule of construction, defendant was responsible on the first bond, and, this being so, practically admits liability here, for it says "If he had surrendered an enforceable obligation upon the faith of a promise to issue a new one, he might conceivably have had a standing to compel the surety to deliver the bond, notwithstanding the bank's fraud, if he himself were innocent," as in fact he was, so far as the evidence shows.

Aside from this admission, however, the case is free from real doubt. We cannot agree with defendant that the bond in suit was not properly delivered, because it never came into possession of the bank, to which defendant mailed it, and which might never have delivered it to plaintiffs. We think the trial judge correctly held that, as a bond, it was delivered when it was mailed by defendant. It was not sent to the bank as defendant's agent, and hence, quoad defendant, it was delivered when mailed. Nor, if we were to assume the bank was plaintiffs' agent, would they be bound by the bank's knowledge at the time defendant mailed the bond, for the fraud was that of the bank itself and knowledge thereof is not to be imputed to plaintiffs: United Security L. Ins. & T. Company v. Central National Bank, 185 Pa. 586; First National Bank v. Fidelity Title and Trust Co., 251 Pa. 529, 535. In fact each of the parties was acting for himself and neither for the other, and the bond was mailed to the bank, not as agent for either party, but in order that the bank might sign as principal debtor. Having received full consideration by the surrender of the old bond, the bank had a legal obligation to sign the new one, as principal debtor, and then hand it to plaintiff. Had it refused to do the former it would—had it been necessary to so hold, despite its primary liability on the deposit account—have been held liable exactly as if it had signed; and had it refused to deliver the bond it could have been compelled so to do by appropriate legal proceedings. Treating the new bond, exactly as all the parties intended it should be, as simply a substitute for the old—to make clear the liability theretofore assumed by the obligors—plaintiff cannot be deprived of any of his rights unless, at the time the old bond was issued, he knew of some default by the bank, which in equity and good conscience he was bound to disclose to defendant. There is no evidence of any such knowledge; and, since the defense, now attempted to be made, is purely equitable in its nature, there is, therefore, no

equity in defendant's favor to defeat the suretyship—which had been in existence for three months, and for which, as a corporation engaged in this business for profit, it had received the consideration agreed upon at the beginning of that period—by proof of other matters not arising until its end; thereby casting the loss it was paid to and did assume, on either Donaldson, Ambler, or the innocent creditors of the Pittsburgh Life and Trust Company. It is not necessary, however, to go back to the date of delivery of the old bond, for there is no evidence that, on or prior to July 15, 1919, when it was returned to defendant, the bank had at any time failed or refused to pay any depositors' checks drawn upon it in due course, and hence neither Ambler nor Donaldson could have had knowledge of facts which they should have made known to defendant; the delays requested, for the reasons stated, coupled with the allegation that the bank would pay the account in full, if it was insisted upon, not being matters which they were in duty bound to disclose under penalty of a loss of the security purchased.

Moreover, defendant would be liable on its contract to deliver the new bond upon the return of the old, exactly as is now claimed, even if the new bond had never been sent, since thereby a binding contract, definite in all its terms, was duly effected; and the new bond, as subsequently sent, was but putting in written form that which had already been agreed upon: Tayloe v. Merchant's Fire Ins. Co., 50 U. S. 390; Lansdowne v. Citizens Electric Light & Power Co., 206 Pa. 188; Smith v. Kaufman, 30 Pa. Superior Ct. 265. When, then, plaintiff returned the old bond, he had fully performed his part of the contract, and defendant's receipt and retention of the bond thus returned bound it also to full compliance, and it could be held liable thereon even though the new bond had never been mailed. Its contention that it had the right to keep the first bond, the return of which was the consideration of the second, and still claim that the lat-

ter was never delivered by it, is one which the law cannot recognize, and this, in effect, the trial judge correctly said to the jury. Under this view of the case also the important date would be July 15, 1919, and, as already stated, no facts were then known to plaintiffs which in any way affected the contract. It is not necessary, however, to pursue this subject further, since the defendant is liable on the other grounds hereinbefore set forth.

The damages agreed on being the sum of $56,597.05, as of the date of the trial on November 10, 1920, we shall direct final judgment accordingly.

The judgment of the court below is reversed, and the record is remitted with directions to enter judgment for plaintiffs for $56,597.05, with interest from November 10, 1920, to the date of entry of said judgment.