526

PENNSYLVANIA R. CO. v. FIDELITY &
DEPOSIT CO. OF MARYLAND.*
No. 5701.

Circuit Court of Appeals, Third Circuit.
Aug. 8, 1935.

On Rehearing Jan. 17, 1936.

George G. Chandler and Robert T. McCracken, both of Philadelphia, Pa., for appellant.

Francis B. Bracken and John Russell, Jr., both of Philadelphia, Pa., for appellee.

Before BUFFINGTON and THOMPSON, Circuit Judges, and JOHNSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below, the Pennsylvania Railroad Company (hereafter called Railroad) brought suit against the Fidelity & Deposit Company of Maryland (hereafter called Fidelity) upon a security bond given by Fidelity to Railroad for the performance by the Pennsylvania Dock & Warehouse Company (hereafter called Warehouse) of a building contract between it and Railroad, which contract Railroad alleged Warehouse and Fidelity had not fulfilled, to the damage of Railroad. The case went to trial, and at the conclusion of Railroad's proofs the court granted a compulsory nonsuit and refused to take it off. Whereupon Railroad took this appeal. After due consideration had, we are of opinion the court erred in some of its rulings and in granting the nonsuit. The proofs are voluminous and the facts involved, and as the case goes back for retrial and new questions and considerations not now before us may then arise, we endeavor in this opinion to confine ourselves strictly and solely to the questions here involved.

The proofs of the plaintiffs, received or excluded, tended to show that Pennsylvania leased a tract of land to Warehouse for 21 years at a graduated rental, beginning at $50,000, taxes, water rents, etc. By the lease Warehouse agreed, at its own expense, to construct certain large

improvements in the way of warehouses and manufacturing lofts to cost approximately $6,756,000; a cold storage building costing $1,780,000; a tunnel 50 feet wide under Railroad's Jersey City passenger station; a footway 60 feet wide, and a ramp 50 feet wide. The contract provided that Warehouse was to proceed with said work with all due diligence and dispatch, so that the "said structures may be commenced and completed as promptly as possible." The lease also provided for a surety bond, or bonds, in the following terms:

"One or more bonds in the total sum of Seven Million dollars ($7,000,000.00) with surety satisfactory to the Lessor, shall be executed by the Lessee and delivered to the Lessor, providing for the erection and completion of said warehouse buildings, tunnel, driveways and ramp and for the payment of any and all obligations hereunder until the erection and completion of said buildings, tunnel, driveways and ramp, whereupon, or upon the completion of said buildings, tunnel, driveways and ramp being otherwise assured to the satisfaction of the Lessor, said bond or bonds shall be cancelled and released. Said bond or bonds shall further provide that in case of failure of the Lessee to erect said buildings, tunnel, driveways and ramp within the time so specified the amount or amounts of said bond or bonds shall be held to be payable to the Lessor as liquidated damages for such failure so to do, and upon the receipt of the said amount or amounts the Lessor shall forthwith proceed to complete the construction of the said buildings, tunnel, driveways and ramp."

Thereafter Fidelity delivered to Railroad the bond of itself as surety and Warehouse as principal, for $7,000,000, in which the contract was recited and the bond conditioned as follows:

"Now, therefore, the condition of this obligation is such that if the Principal shall, at its sole cost and expense, construct and fully complete the warehouse buildings, tunnel, driveways and ramp, in said indenture of lease described, in the manner and within the time as provided for and required by said indenture of lease, and shall pay any and all obligations imposed upon it by said indenture of lease during the construction of said warehouse buildings, tunnel, driveways and ramp, and until the same shall have been fully completed, then this obligation shall

be void; otherwise to be and remain in full force and effect.

"It is understood that in executing and delivering this bond, the Principal and Sureties hereby agree with the Obligee that if the Principal shall fail to erect said buildings, tunnel, driveways and ramp, within the time specified in Paragraph 5 of Article Four of said indenture of lease, that the penal sum of this bond shall be paid to the Obligee as liquidated damages, and not as a penalty for the Principal's failure so to do, and upon the receipt by the Obligee of said sum, the Obligee shall then forthwith proceed to complete the construction of said buildings, tunnel, driveways and ramp."

Thereafter Warehouse proceeded to perform its part of the contract, but in fact never completed it, and, after encountering financial troubles and in spite of the financial help by Railroad, hereafter recited, eventually went into bankruptcy. The attention of Fidelity was called to the situation, but it did nothing in the way of taking over the then uncompleted work. Such being the situation, Railroad gave or offered evidence at the trial of sums of money it advanced to Warehouse, and which were applied to and aided in the fulfillment, pro tanto, of the contract, and which advancements were made with the consent of all parties.

The proofs, offered or rejected, tended to show Railroad's damages, aggregating $5,215,168.86, together with interest made up by cash advancements, $2,464,-800; the estimated cost of completing warehouses, $281,546; completing ramp, $58,739; the estimated cost of constructing the tunnel, $287,311; unpaid rentals, $154,166.66; unpaid taxes, $488,606.20; and the sum of $1,500,000 junior bonds which were taken by Railroad from Warehouse under an agreement between them of April 20, 1931, which bonds were rendered valueless by foreclosure proceedings induced by Warehouse's failure to complete. Such advance of money to Warehouse by Railroad, we here note, would seem to be allowed or approved by the tripartite agreement of March 9, 1931, which provided:

"It is mutually agreed by and between the parties hereto that any moneys which said The Pennsylvania Railroad Company may advance either by way of a loan or loans to said Pennsylvania Dock and.

Warehouse Company, or otherwise, for the purpose of fully completing the construction of said warehouse buildings, tunnel, driveways and ramp, if, as and when so advanced, and the completion of said construction by the use of any such moneys so advanced, shall not be deemed or construed in any way to prejudice or otherwise affect the rights, and/or liabilities of either or any of the parties hereto, under or by virtue of said bond, and likewise shall not be deemed or construed in any way to prejudice or affect any claim that any party hereto may assert against either of the other parties hereto."

The April 20, 1931, agreement between Warehouse and Railroad also contained the following:

"In consideration of the covenants and agreements herein contained to be kept and performed by the Railroad Company, the Warehouse Company, for itself and for its respective successors and assigns, does hereby fully and forever release and discharge the Railroad Company, its successors and assigns, from any and all liability and claims for damages which the Warehouse Company is now asserting, and/or which the Warehouse Company may, might, should or could, now or hereafter assert against the Railroad Company arising out of or on account of the terms, conditions, covenants, agreements, and stipulations, or either or any of them, in said Indenture of Lease bearing date August 20, 1929, contained in respect of or pertaining to the construction and completion of the warehouse buildings, tunnel, driveways and ramp, in said Indenture of Lease mentioned and described."

■ It will be observed that there was no proof of any claims Warehouse had, their nature, extent, pertinence, the damage caused thereby, or the amount of any loss, damage, or injury done to or suffered by Fidelity or, to use the language of the trial judge in refusing to take off the nonsuit: "There was, it is true, no trial evidence of any claims, just or otherwise. This is aside from the mark." This statement, made with trial judge's customary frankness and his desire to make clear the exact question involved in his rulings, restricts the underlying question to narrow and clearly-defined limits, namely, whether this release, without any proof of what was released, or what damage, loss, or injury Fidelity suffered thereby, warranted the granting of the nonsuit.

The contract of lease was made and delivered in Pennsylvania, and the suit is in a federal court in that state. The law of Pennsylvania on the release of paid sureties and bearing on the burden, on a paid surety, of showing injury by a release and of the relief afforded such paid surety in case injury is done by a release, is well settled.

In Philadelphia v. Fidelity & Deposit Co., 231 Pa. 208, 80 A. 62, 63, Ann.Cas. 1912B, 1085, it was held: "We find no direct averment in the affidavits of defense that the surety was actually harmed by the extensions granted to the contractors, and the facts as stated therein are not sufficient in themselves to raise such a presumption. * * * In a case of this kind, there is no presumption that the surety company is harmed, the prejudice must be made to appear, and the suggestion of mere contingencies or possibilities is not enough." The Supreme Court of that state, in Sokoloff v. Fidelity & Casualty Co., 288 Pa. 211, 135 A. 746, 747, thoroughly summed up the state decisions on the subject, saying:

"We have not departed from the principle laid down in Young v. American Bonding Co., 228 Pa. 373, 380, 77 A. 623, 626: 'The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of strictissimi juris prevails, as it always has; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance.' The principle announced in this case has been recognized in many others. In Butz & Clader v. U. S. Metal Products Co. et al., 255 Pa. 53, 55, 99 A. 169, 170, we said, 'To release the surety, there must have been some substantial change in the terms of the contract;' and in Phila. v. Ray, 266 Pa. 345, 109 A. 609, that 'it must prove also that the change is material and prejudicial.' See, also, M. E. Church of Franklin v. Equitable Surety Co., 269 Pa. 411, 112 A. 551; Donaldson v. Hartford A. & I. Co., 269 Pa. 456, 463, 112 A. 562;

South Phila. State Bank v. National Surety Co. [288 Pa. 300], 135 A. 748."

Moreover, this court, in Piel Const. Co. v. Com. of Pennsylvania, to Use of Hendricks, 35 F.(2d) 265, 267, followed the Pennsylvania holdings, saying:

"The question concerns familiar law[1] that a material change in the performance of an assured contract which would relieve a personal surety, not having consented, will not relieve a commercial surety unless it show that it was injured by the change."

In view of these holdings and many others that could be cited, the court below was in error in holding the release relieved the paid surety and in refusing to take off the nonsuit. The case should have been proceeded in, and if the surety proved it was damaged by such release and the quantum of such damage, then its liability under the bond was to that extent lessened. Such holding warrants a decree of reversal, but certain other alleged errors of the trial court are called to our attention, and we are asked to rule on them so that alleged error in these may be avoided in the new trial.

The bond being in force and the improvements provided in the contract in some cases not being made and in others not completed, we are of opinion that the covenant to build and complete was an absolute one. See Trainor Co. v. Ætna Cas. & Surety Co., 290 U.S. 47, 54 S.Ct. 1, 3, 78 L.Ed. 162, and Purdy v. Massey, 306 Pa. 288, 159 A. 545, and on the surety company failing to take over the contract and build or complete, the Railroad may show what moneys it advanced to Warehouse to aid in fulfilling the contract, and which were actually so expended. It may also show what sums it expended to complete the work, and in case of uncompleted work, it may show what was the fair sum required to complete the work, or, as said by the Supreme Court in the case above cited, "Plainly the obligation of the bond was one of guaranty and not indemnity, and could be fulfilled only by the erection of the buildings or payment of the penalty in case of default." From this it follows that

Warehouse having contracted to pay rental and taxes, and having failed to do so, Fidelity should make good its default. It follows also that if the junior or second mortgage bonds were bought from Warehouse by Railroad and the proceeds were applied to the fulfillment of the contract, and were afterwards lost by the foreclosure as a result of the nonfulfillment of the contract, Railroad could recover therefor as damages resulting from Warehouse's breach of its bond and Fidelity's failure to make fulfillment.

In conclusion, so holding as above, the grant of the nonsuit and the refusal to take it off are reversed, and the case remanded for new trial.

On Reargument.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

PER CURIAM.

After reargument had and re-examination and full consideration of all questions involved, we adhere to our decision heretofore made.

---

[1] New Amsterdam Cas. Co. v. U. S. Shipping Board (C.C.A.) 16 F.(2d) 847; Taylor v. Continental Supply Co. (C.C. A.) 16 F.(2d) 578; Southern Pacific Co. v. Globe Indemnity Co. (C.C.A.) 21 F. (2d) 288; Hale County, Texas, v. American Indemnity Co. (C.C.A.) 63 F.(2d) 275; Beaver Trust Co. v. Morgan, 259 Pa. 567, 103 A. 367; B. & L. Association v. Fink, 182 Pa. 52, 37 A. 1009.