# Young, Appellant, *v.* American Bonding Company of Baltimore.

*Principal and surety—Bond to secure contract—Variance from contract—Release of surety.*

1. Where a bond issued by a surety company refers to an agreement between the principal in the bond and the obligee, and recites so much of the agreement as relates to what the principal had engaged to do, and for the performance of which the surety had become liable, a variance in the performance of the contract from that portion recited in the bond will discharge the surety, if it appears that the ability of the principal to perform his part of the contract had been thereby materially lessened, and the risk of the surety correspondingly increased.

2. The interest of a surety in an earlier contract between the principal and the obligee to which the surety is not a party can arise only at the point where the liability of the surety is touched, and where such liability is touched, it must be in connection with something material before the variance from the contract can be made available as a defense to the bond.

3. The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves "surety companies" their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee.

4. In an action on a bond given to secure the performance of a contract where the principal claims that the obligee, the other party to the contract, had released him from all obligation to complete the work contemplated by the contract, and this claim is disputed and denied, the contention raised by the conflict of evidence must be passed upon as a question of fact by the jury.

Argued March 28, 1910. Appeals, Nos. 74 and 75, Jan. T., 1910, by John L. Young, Kennedy Crossan and Jane Fortescue, in No. 74, and by Norman Kellogg in No. 75, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1906, No. 2,594, on verdict against defendant, Norman Kellogg, and for American Bonding Company non obstante veredicto, in case of John L. Young, Kennedy

Crossan and James Fortescue *v.* Norman Kellogg, George H. Thomas, David M. Andrew, Charles H. Basshor and the American Bonding Company of Baltimore. Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit upon a bond of suretyship. Before WILLSON, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiffs for $27,500. Subsequently judgment was entered on the verdict against defendant, Norman Kellogg, and in favor of the defendant, the American Bonding Company, non obstante veredicto.

*Error assigned* by plaintiffs was in entering judgment for the bonding company non obstante veredicto.

*Error assigned* by Norman Kellogg was in dismissing his motion for judgment in favor of himself non obstante veredicto.

*Ellis Ames Ballard*, with him *Boyd Lee Spahr*, for appellants, John L. Young et al.—The bond was not given for the faithful performance of the agreement of February 26, 1906, but only for the accomplishment of a single act; namely, the completion of a building of a certain cost within a certain time: Shelton v. American Surety Co., 131 Fed. Repr. 210; New Haven v. National Steam Economizer Co., 79 Conn. 482 (65 Atl. Repr. 959); Baglin v. Title Guaranty & Surety Co., 166 Fed. Repr. 356; Guaranty Co. v. Brick Co., 191 U. S. 416 (24 Sup. Ct. Repr. 142); Atlantic Trust, etc., Co. v. Laurinburg, 163 Fed. Repr. 690; Alexandria Water Co. v. National Surety Co., 225 Pa. 1.

There was no departure from the terms of the contract of February 26: Alexandria Water Co. v. National Surety Co., 225 Pa. 1; Warner v. Connecticut Mut. Life Ins. Co.,

109 U. S. 357 (3 Sup. Ct. Repr. 221); Cross v. Allen, 141 U. S. 528 (12 Sup. Ct. Repr. 67).

Even if there was a variance it was with the surety's knowledge and assent: Roach v. Summers, 87 U. S. 165.

*Francis B. Bracken,* for appellee, American Bonding Company.—The American Bonding Company was discharged from liability as surety on the bond by reason of a material alteration or departure from the contract of February 26, 1906, under which, according to the condition of the bond, the building was to be erected by the principal therein, Norman Kellogg: Zeigler v. Hallahan, 131 Fed. Repr. 205; Shelton v. American Surety Co. of New York, 131 Fed. Repr. 210; Bensinger v. Wren, 100 Pa. 500; Bauschard Co. v. Fidelity & Casualty Co., 21 Pa. Superior Ct. 370; Nesbitt v. Turner, 155 Pa. 429; Alexandria Water Co. v. National Surety Co., 225 Pa. 1; Holme v. Brunskill, L. R. 3 Q. B. Div. 495; Miller v. Stewart, 22 U. S. 680; Cross v. Allen, 141 U. S. 528 (12 Sup. Ct. Rep. 67); New Haven v. National Steam Economizer Co., 79 Conn. 482 (65 Atl. Repr. 959).

*Leo Belmont,* for appellant, Norman Kellogg.

OPINION BY MR. JUSTICE STEWART, May 24, 1910:

We have here two appeals to consider. A recital of the facts is necessary to an understanding of the questions involved. The action was against principal and surety in a bond of $25,000 conditioned on the completion of certain buildings and improvements within a stipulated time. The plaintiffs being the owners of certain real estate at Atlantic City contracted by written article of agreement dated February 26, 1906, to sell and convey the same to Norman Kellogg, one of the appellants. The agreement provided that the consideration should be a purchase money mortgage for $500,000, to secure an issue of first mortgage gold bonds of like amount bearing interest at the rate of six per cent, payable semiannually, with a

sinking fund provision of $10,000 yearly, the whole issue of bonds to be redeemable at any understood period after three years, and to become due and payable at the expiration of ten years, the mortgage to be held by the Land Title & Trust Company of Philadelphia as trustee for the bondholders. It was further stipulated that of the bonds $400,000 were to be forthwith issued to the vendors, and the remaining $100,000 were to be held by the trustee, to be paid over upon the order of Kellogg upon the completion by him or his assigns of certain buildings and improvements which he had covenanted to make on the purchased premises, as part of the consideration, at an actual cost of not less than $350,000. Another provision in the contract was that in case the vendees should organize a corporation for the purpose of improving the property and conveyed the title to such corporation, the corporation should at the request of the grantor execute its bonds to the amount of $500,000 to be secured by the purchase money mortgage above provided for, thereby making them a first lien. Still another was that inasmuch as no cash consideration was being paid on the purchase, in order to indemnify the vendors against loss of rentals in case of failure of the vendee to make the improvements stipulated for within the required time, the latter should furnish a bond with security in the sum of $75,000 (afterwards reduced to $25,000) to protect against such contingency. The contract was to take effect and become binding on the parties only upon the execution and delivery of this bond. In compliance with this stipulation the bond here sued on was furnished and accepted March 9, 1906. It recites the fact of agreement of sale and purchase, the consideration, and the reason and purpose in requiring the bond, followed by this condition: "Now therefore the condition of this obligation is such that if the said principals shall well and faithfully construct and complete said improvements of the value of Three Hundred and Fifty Thousand Dollars ($350,000) upon said property, as provided in said agreement, on or before the

31st day of December, 1906, then this obligation to be null and void; otherwise it shall remain in full force and effect.'' The obligors were Kellogg and two others who signed as principals, and the American Bonding Company as surety. Kellogg and the bonding company were the only parties served, and the case proceeded against them. The facts as developed on the trial showed entire failure on the part of Kellogg to make the improvements stipulated for, although a corporation organized by him to accomplish this undertaking had expended in the attempt before its abandonment upwards of $60,000. A verdict was rendered for the plaintiffs, which upon a point reserved, affecting only the bonding company, was set aside as to the bonding company by the court, and judgment entered for the latter non obstante. This appeal is from the judgment so entered. Upon the admitted facts the learned trial judge held, that in the course of settlement between the plaintiffs and Kellogg, there had been such a departure from the terms of the original contract as relieved the surety. The variance was in connection with the purchase money mortgage. Upon the acceptance by plaintiffs of the bond in suit, March 13, 1906, the transaction between plaintiffs and Kellogg was completed, the former executing and delivering their deed of conveyance, and the latter a purchase money mortgage. This mortgage contained none of the special provisions set out in the contract. By its terms it was given to secure, not an issue of $500,000 of first mortgage bonds, with the incidents which according to the provisions of the contract were to attach to such bonds, but to secure one certain bond given by Kellogg in the sum of $500,000 payable to the plaintiffs' representative or his assigns on or before March 1, 1916, with interest payable semi-annually. In neither bond nor mortgage is there any reference to the special provisions which were to govern, nor does either contain any reference to the rights of Kellogg. The learned trial judge held that this constituted a variance in substantial and material respects

from what was required by the agreement, and operated to release the surety in the bond. The appeal raises several questions which we shall consider in the order they have been presented. First, it is contended that the bond in suit was not given for the faithful performance of the contract of February 26, 1906, but only for the completion of certain improvements at a certain cost within a certain time; and that therefore nothing in the contract is to be considered as affecting the obligors' liability. Emphasis is put on the fact that the contract does not accompany the bond, and that it is not by express terms made part of the bond. A sufficient answer to this would be that the bond by its terms recites the fact of the contract, and so much of the contract is introduced as is necessary to give a full understanding of what the respective parties had engaged to do thereunder. It expressly recites, among other things, that the consideration for the conveyance to Kellogg was "a portion of an issue of bonds as set forth in said agreement, to be secured by a mortgage upon said premises, together with certain improvements to be erected thereon by the said Norman Kellogg or his assigns, which said improvements are to be fully completed on or before December 31, 1906." Were it simply a question as to the extent of the obligation under the bond, the latter would have to be its own interpreter; the obligation could not be enlarged or modified by the contract except as introduced into the terms of the bond and made part of it. But that is not the question here. The reference to the contract is not to determine or qualify the extent of the obligation, but to show the conditions under which the obligation was assumed as affecting the obligee's right to recover thereon. Given the right to recover, the extent of the recovery is not a question. So much of the contract as is recited in the bond shows what Kellogg had engaged to do, and for the performance of which the bonding company had become surety. What it does not show, unless inferentially, is that such of the bonds as were outside the portion of the issue to be

allotted to plaintiffs, were to be issued on the order of Kellogg on completion of the work, and, except in the most general way, the nature of the security, upon which these bonds were to rest. It recites quite enough, however, to show that the engagement under the bond had direct reference to the contract of February 26, 1906, and was entered into on the common understanding that the mutual obligations of the parties thereunder would be faithfully observed. The authority cited by the learned counsel for appellants in support of their contention in this regard, New Haven v. National Steam Economizer Co., 79 Conn. 482, cannot serve them. That case was similar in many of its facts to this. There two contracts were under consideration, a construction contract, and a contract of suretyship by a surety company. In disposing of the case the court uses this language: "But while the concern of the surety in the principal contract is thus a vital one, it is only in its relation to the surety's liability under another contract, its contract of suretyship, that it exists at all. Beyond the point where this liability is touched, the surety company, being a stranger to the construction contract, has no interest in it. For these reasons it follows that the defendant surety company cannot found a defense upon any conduct of the parties to the principal contract which is either conformable to its provisions, or, being a departure from its letter, was not a material one." There can be no disagreement with respect to the law as here stated. The interest of the bonding company in the earlier contract, to which it was not a party, could arise only at the point where its liability was touched; and we agree further, that where its liability was touched, it must be in connection with something material before the conflict can be made available as a defense.

This brings us to the second contention of appellants, viz., that the settlement of March 13 involved no material departure from the contract of February 26, 1906. In all essential particulars the appellee here is an insurance

company, and its obligation in this particular instance was that of an insurer. It was paid for its undertaking; the amount of its compensation being based on the calculation of risk assumed. The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of strictissimi juris prevails, as it always has; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance. "The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves 'surety companies' their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee:" 32 Cyc., p. 306, and the authorities there cited in support. Having regard to this particular contract before us, and interpreting it according to its own terms, we have said that it is essentially a contract of insurance. It follows that there is but one way by which it is to be determined whether the variance complained of was a material variance. The test is to be found in the answer to the question, whether it substantially increased the chances of the loss insured against. If such were the result, it would have been fair reason for demanding a higher premium than was paid, and the materiality is thus made apparent: Hartman v. Ins. Co., 21 Pa. 466; Murphy v. Ins. Co., 205 Pa. 444. It is not a question whether the variance actually caused the breach of the

bond; but whether it was such a variance as a reasonably careful and prudent person undertaking the risk would have regarded as substantially increasing the chances of loss. To this, as it seems to us, there can be but one answer. Under the contract $100,000 of bonds of a certain description were to be available to Kellogg on completion of the improvements. These bonds were to be secured by a mortgage on the property containing certain definite provisions as to their redemption; when issued they were to be on a parity with the bonds which the vendors were to receive, and were to rest on the same security. If the property conveyed had a value of $400,000—the amount the vendors were to receive—it is safe to assume that any considerable expenditure in improvements thereon as the work progressed would give to the bonds held in reserve for Kellogg, and which were to be issued only on completion of these improvements, a corresponding value as an asset which could, by way of anticipation, be made available in aiding him in the completion of the work by assignment or otherwise. Would such fact be likely to occur to anyone in calculating the risk assumed in underwriting Kellogg's performance? If so, here was a material departure from the contract. The settlement as made contained no provision for Kellogg's bonds; indeed, it precluded the possibility of their issue at least on the basis originally provided. It gave the vendors one bond for $500,000, $100,000 in excess of the price stipulated for; it showed no interest in Kellogg in the security; but on the other hand increased his liability. To that extent it increased the hazard of his accomplishing what he had undertaken to do, and correspondingly increased the risk the appellee had underwritten. It is not an answer to this to say that it was but a temporary arrangement; that what was contemplated was that the improvements were to be made by a corporation to be organized for that purpose, and that the bonds were to be issued by such corporation. True, the contract contemplated the contingency of Kellogg organizing a corporation to take over

the property and make the required improvements; but the corporation was to acquire the property through a conveyance from Kellogg, and the bonds to be issued by it were to conform to the bonds previously provided for, that is to say, "to be a first lien upon all its property and assets, being further secured by the purchase money mortgage already provided for." The essential fact is that the mortgage given by Kellogg was not the mortgage "already provided for," and could not be made to secure bonds with the incidents that were to attach under the original contract. That the settlement was a contemplated temporary expedient is nothing more than a suggestion; but if it were a fact established in the case, it rendered impracticable the original scheme. The third position advanced by appellants is, that whatever departure there was from the contract was with the knowledge and approval of the surety. It is not pretended that the surety was consulted as to the mortgage which was accepted, or had any knowledge as to its contents. It was acquainted with the fact that Kellogg had organized a corporation to make the improvements, but its knowledge extended no further. It had a right to assume that notwithstanding this arrangement the terms of the original contract would be observed, for it was so stipulated. The case was properly ruled by the learned trial judge. The assignments of error in this appeal are overruled.

Next is the appeal of Norman J. Kellogg, principal in the bond. The motion for judgment non obstante in his case was refused. The defense set up in his behalf was that after the corporation which had been organized for making the improvements on the property conveyed— The Nixon Realty & Amusement Company—had ceased operations, negotiations were begun in which Young, one of the plaintiffs, participated, to secure the withdrawal of Kellogg in order that a different arrangement might be made for the completion of the improvements on a reduced plan to cost about $200,000, through the joint cooperation of Young and the Nixon company. Just how

far these negotiations had progressed was the question in the case. Kellogg's contention was that it was a completed agreement through Allen, the architect, representing Young; that relying upon this completed agreement he ceased all effort to complete the improvements according to the original scheme and retired from the enterprise; that he was never again asked to proceed with the work, and that Young failed wholly to carry out his contract in this regard. Upon this aspect of the evidence an estoppel was claimed. Were these the admitted or established facts in the case there could be no question as to the sufficiency of the defense; but, unfortunately for appellant, they were neither admitted by the plaintiff nor accepted by the jury. Young, while admitting that negotiations were entered upon looking to the elimination of Kellogg, emphatically denied that he authorized Allen to conclude a deal with Kellogg, or that Allen ever exhibited to him a letter from Kellogg in which the former stated his acceptance of terms proposed for his withdrawal. The learned trial judge was evidently impressed with the strength of the evidence supporting Kellogg's contention, but because of the conflict felt compelled to submit the question of fact to the jury. It would have been error to have done otherwise. It is unnecessary to discuss the assignments which relate to the admission of evidence offered by the plaintiff. In view of the issue on which the case turned, this evidence could not have prejudiced the appellant; but aside from this, we discover no error in admitting it.

The assignments of error in this appeal are overruled. The judgment is affirmed.