STATE OF MISSOURI EX REL. SARAH JANE HARDY, RESPONDENT, v. JOHN M. FARRIS AND MASSACHUSETTS BONDING & INSURANCE COMPANY, APPELLANTS.—47 S. W. (2d) 198.

Springfield Court of Appeals. March 7, 1932.

1008

*Leahy, Saunders & Walther* and *J. L. London* for appellant, Massachusetts Bonding and Insurance Co.

*Ray B. Lucas* for appellant, John M. Farris.

*Ward & Reeves* for respondent.

BAILEY, J.—This is a suit by a ward, after she had attained her majority, on the bond of her guardian John M. Farris, as principal, and the Massachusetts Bonding & Insurance Company as surety.

The petition sets forth that plaintiff is now of age; that when she was a minor of tender years, her mother died leaving her certain insurance money; that her father John M. Farris was appointed her guardian and curator by the probate court of Scott county, Missouri,

which court directed said guardian to give bond in the sum of $4000; that said John M. Farris, as principal, and defendant Massachusetts Bonding & Insurance Company, as surety, made and executed said bond and the said John M. Farris took charge of plaintiff's said money and property and has had charge of same until the present time; that the said guardian has failed to account to her therefor or make any final settlement; that on the 15th day of February, 1927, the said guardian owed plaintiff the sum of $1166.04; that said guardian has breached said bond in that he has not well, truly and faithfully discharged his duties as guardian and that he justly owes her the sum of $1166.04, together with interest from the 15th day of February, 1927, for which plaintiff prays judgment.

Defendant, John M. Farris, filed a separate answer in which he alleged that on the 6th day of September, 1929, the said Sarah Jane Hardy was of age and on that date she and the defendant had a settlement of their accounts, and that in full settlement of all monies due her from him as guardian he gave her his note in the sum of $1100 and she receipted him therefor; that ever since said date she has held said note which was given in full settlement of all claims owing her by him as guardian; that after allowing all just credits, commission and set-offs, the $1100 note more than pays said plaintiff whatever amount was due her from said defendant.

The separate answer of the bonding company also sets up this alleged settlement and receipt given by plaintiff to the said John M. Farris, as a complete discharge and payment of its obligation.

Plaintiff's reply denies the note was given or accepted by her as a payment, but that she refused to accept same and that there has been no payment whatever on the amount due plaintiff from defendant John M. Farris; and further states that said note is, "herewith filed and tendered back to defendant."

The trial was held March 16, 1931, and resulted in a verdict and judgment for plaintiff in the sum of $1346.20. From this judgment both defendants have appealed to this court.

Error is assigned in the failure of the trial court to sustain appellants' separate demurrers to the evidence at the close of the whole case. The two demurrers will be considered together since both are based upon the same theory of law. The evidence must be considered in the light most favorable to plaintiff and every reasonable inference in her favor must be indulged. It is undisputed that no payment was made of the amount due plaintiff as shown by the last settlement of defendant John M. Farris, except certain minor items hereinafter referred to, unless the note and receipt mentioned in defendants' answers were such a settlement and payment. The only evidence in regard to the circumstances and understanding between

plaintiff and her guardian at the time the note and receipt were executed and delivered, comes from the testimony of plaintiff, which is undisputed since the father was not present at the trial. The case hinges on this testimony which was, in part, as follows: "Sarah Jane Hardy, the plaintiff, testified that she was twenty-three years of age the day of the trial; that she was the daughter of John M. Farris; that she lived in Detroit, Michigan; that he was her guardian; that she was of age March 16, 1929; that he had not given her any money on this; that they talked about his paying her in September, 1929; that was after she was twenty-one; that, he said he wasn't ready to settle; that he would be the following spring; that he wanted her to sign a paper until he got his building and loan to show to the court for an extension of time—.

"Q. Was there anything said about that being a payment? A. No.

"Q. Did you accept it as a payment? A. No, I did not.——

"Witness identified an instrument marked "Exhibit A.' She stated this was the note he gave her at the time of the conversation September 6th. At the time he gave her the paper marked 'Exhibit A' he said that was to show a record in court that she had given him an extension of time to make a settlement in court; when they first went there he told her that he owed her some money; that he would have settlement with the probate court; this was all she remembered; her father prepared the paper that says, 'One day after date I promise to pay to the order of eleven hundred and no hundred dollars?' This was the instrument he gave her at the time of the conversation; that there was another slip of paper she signed, but he said that was to show that he got an extension of time; there wasn't anything written on it, so she took his word for it—her own father."

On cross-examination she testified: "At the time she had the conversation with him, September 6th, her father told her he was not ready to settle; that he said he had to show the court that he had to have an extension or wanted an extension until spring; that was the reason he wanted the paper from her; that she was willing to let him have it and knew he was going to file that in court (Bill of Ex., p. 18); that if he did file it, it was done with her knowledge and consent until the building and loan was paid and then he was to make final settlement; that he said he wanted an extension of time; he couldn't make settlement then; that she was willing to give him an extension of time; that she gave it to him; that she took the note for that reason and signed a blank paper; that he did not tell her what he was going to put on there; that he didn't say he was going to put a receipt on there (Bill of Ex., p. 19); that

she never took it up with the Massachusetts Bonding & Insurance Company, and asked their permission and consent to do that; that she didn't know who the bonding company was."

After this conversation with her father and, the giving of the note by him she received a letter from him on January 15, 1930, which is as follows:

"Poplar Bluff, Mo.

"Dear Sarah:

"I received your letter the other day and note what you say and am getting up the money for you fast as I can. I can send you $300 right away or do you want me to pay it to your attorney.

"Ward never has said anything to me about it and I have to get my information through other sources

"All he thinks about is suing the bonding Co. and, you know what that means they turn right around and sue me for what they call embezzlement and the cost of a suit like that would mean two or $300 cost and if they could prove guilty you know what the consequence would be

"I am having a final settlement with the probate court the 2nd of February and hope to have most of your money ready by that time

"The money I had for you and was going to give to you last spring was building and loan paid out at Chaffe I owed them some back on the concrete house and they transfered what I coming there on that acct. I was sick over it but could not help it and had to commence raising more money for you and if I am given a chance will get it to you quicker than you can get it out of the bonding Co.—I have made application to Little Rock Bld. & Loan Co. for the money and the appraizer recommended the loan but money is in sutch demand down here with so many banks going broke I dont know just when I will get it that is the reason I wanted to pay you all I could until I get the loan through

"I have paid out a lot of debts in the last ten years and got by with them with honor did not take bankrupt law as a good many others have. If I get you and the ballance I owe Orville paid I will be ready to start over again.

"Let me know who you want me to pay this money to

"Your Father,

"J. M. FARRIS."

(The introduction of this letter was objected to by the defendant bonding company because not binding on it.)

It is first contended by defendants that the evidence shows that the time of performance of the obligation of the principal in the bond was extended by plaintiff for a valuable consideration, to-wit: The promissory note for $1100; that it was extended for a definite period

of time, without the consent of the surety and that therefore the surety was discharged. In support of that contention defendants cite the following authorities: Stillwell v. Aaron, 69 Mo. 539; German Savings Ass'n v. Helmrich, 57 Mo. 100; Bank of Neelyville v. Lee, 193 Mo. App. 537; Bank of Senath v. Douglass, 178 Mo. App. 664; Westbay v. Stone, 112 Mo. App. 411; Bruegge v. Bedard, 89 Mo. App. 543; 50 C. J., p. 130, and numerous cases cited therein.

The Stillwell case was an ordinary suit on a note by the indorsee against the maker and surety. The evidence showed Stillwell gave an extension of time on the note for a valuable consideration without the consent of the surety, who for that reason was held to be discharged. The German Savings Ass'n case simply holds that the granting of an extension of time by the holder of a promissory note, for a definite period, releases the surety on the note. The Bank of Neelyville case was also a suit on a note and was decided on the principal of equitable estoppel, something not involved in this case. In the Bank of Senath case, the maker of a note was held to have become a surety on the note by reason of the action of the payee therein in accepting a third person's promise to pay the note without the consent of the maker and, by reason of an extension of time of payment, without his consent, the original maker was held to be discharged. The Westbay and Bruegge cases are of the same type, i. e., suits on notes against the sureties. The text cited in 50 C. J., p. 130, is a concise statement of the general rule that the extension of time of payment of the principal obligation by the creditor or obligee, without the consent of the surety, will discharge the surety, subject to certain exceptions. None of these authorities appear to be decisive of the proposition here involved.

The defense that there was an extension of time, in this case, without the consent of the surety for a definite time and that thereby the surety was discharged, cannot be sustained for several reasons. In the first place, before there can be an extension of time, there must be a time of performance fixed as to the original obligation. It is said that, "Where neither the surety nor the principal contract fixes a period of maturity, no extension of time can discharge the surety. Where the surety has become liable for all debts of the principal to become due, extensions granted to the principal will not discharge the surety if the debt as extended answers to the description of those intended to be secured." [50 C. J. 136.]

The logic of that statement could hardly be questioned. The whole theory that an extension of time will discharge the surety is based upon the principle that the contract has been changed by the extension of time. If the contract provides no time of performance, the extension would not necessarily change it, but if anything only fix the

time, otherwise uncertain. There is nothing in the wording of the bond in this case indicating when the final settlement of the guardian with his ward shall be made. The statutes of this State likewise fix no definite time of settlement. [Secs. 430, 482, R. S. 1929.] It therefore follows that since no definite time of performance, or time of settlement of the guardian with his ward, was fixed either by the contract of surety or the statute, there could be no discharge of the surety based upon an extension of time.

Another reason why the defense as to extension of time is not available is that the extension, according to plaintiff's evidence, was not to a definite date, but to the "spring" of 1930. The extension of time, if the surety is to be discharged on that account, must be to a definite future date. [Aultman & Taylor Co. v. Smith, 52 Mo. App. 351; Citizens Bank of Union v. Hilkemeyer, 12 S. W. (2d) 516.]

It also appears that the surety in this case was a surety for hire. In such cases it is held that the surety must not only prove an extension of time of performance by the creditor without his consent, to a definite date, but must further show that he was prejudiced thereby. [50 C. J. 153, par. 252; Gunsel v. American Surety Co., 308 Ill. 321, 139 N. E. 620; Peo. v. Traves, 188 Mich. 345, 154 N. W. 130.]

The latter case quotes from Young v. Bonding Company, 228 Pa. 373, 77 Atl. 623, wherein it is said, "The trend of all our modern decisions, Federal and State, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of *strictissimi juris* prevails, as it always has; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance. [Young v. Bonding Co., 228 Pa. 373, 77 Atl. 623, 154 N. W. 134.]"

The authorities generally uphold that statement of the law and we think it is applicable here. There is no proof in this case that defendant surety was prejudiced or hampered in its just rights by reason of the alleged extension of time. It is not a favorite of the law (Southern Real Estate Co. v. Bankers' Co., 184 S. W. 1031), and in the absence of such proof the defense is not available.

It is also held that a surety for an administrator is not discharged by an extension of the time of payment of a debt due, by the estate, as the surety does not undertake to pay the debts, but guarantees that the administrator will faithfully and honestly administer the estate.

[Gillet v. Rachel (La.), 9 Rob. 276.] So in this case, the obligation of the bond is that the guardian, "shall well, truly and faithfully discharge the duties of his office, according to law." Such being the undertaking, it is quite different from the obligation for the payment of money at a date certain, as in the case of an ordinary promissory note.

We will let our decision on the question of the effect of the alleged extension of time fall upon the reasons above set forth, although other reasons might be assigned, and hold that the so called extension of time fails as a defense to this cause of action.

It is urged that there was a full settlement between the principal of the bond and his ward, and that therefore the surety was fully released. There is no proof in the record that the note in question was given and accepted in payment of the amount due from the guardian to the plaintiff. It is held that, "the giving of a promissory note for a pre-existing debt does not operate to extinguish the indebtedness for which the note is given without a special or express contract imparting that effect to the transaction." [Morton Electric Co. v. Schramm, 277 S. W. 368, l. c. 371; Big Four Implement Co. v. Chesney, 204 Mo. App. 285, 223 S. W. 944; Missouri State Highway Board, ex rel. v. Southern Surety Co., 9 S. W. (2d) 92.]

The evidence in this case shows that plaintiff refused to accept the note in payment of the amount due her from her guardian and there is no evidence to the contrary. The letter of defendant Farris, heretofore set forth, written after the alleged settlement, makes no such claim. Mere possession of the note would raise no conclusive presumption that the note was accepted as payment. The cases all hold that if the note is produced and tendered at the trial, in the absence of evidence to the contrary, the payee in the note alleged to have been accepted in payment, may sue on the original contract. (Cases cited.) We must rule this point against defendants.

Error is alleged in refusing to permit defendant bonding company to amend its answer before the trial had begun by setting up estoppel as a defense. All the evidence which might tend to support the theory of estoppel went into the case. After the evidence was all in defendant might have properly offered an amendment to conform to the proof. [Southern Real Estate Co. v. Banker's Co. (supra), 184 S. W. l. c. 1033.] This was not done. It also appears the issue was presented to the jury in plaintiff's instruction No. 1. We perceive no sound reason for reversing the case on that ground.

Error is alleged in refusing defendants' Instruction D. This instruction was in regard to an allowance for the guardian's compensation, which the instruction fixed at five per cent, and for certain other items of which there was no proof. While the law provides a

compensation of five per cent to an administrator or an executor, no such provision is made as to a guardian. [See sec. 436, R. S. 1929.] The instruction was properly refused.

It is urged that the verdict was excessive. The record shows defendant guardian owed plaintiff about $1166.04 on February 15, 1927. She was entitled to that amount with interest for approximately four years. Interest would therefore be about $279, which added to the principal would total $1445. The verdict was for $1364.20. Allowing credit for all alleged items, the verdict was not excessive. Other errors alleged are covered by what has been said. The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.