## Valentine v. Hall

*H. Monroe Houtz*, for plaintiff.

*Raymond Lowery*, for defendant.

APONICK, P. J., for the court en banc, November 18, 1960.—This is a motion for judgment on the pleadings in an action upon a bond in which individual defendant is principal and corporate defendant is surety.

Only corporate defendant has been served with process. The action grows out of the case of Commonwealth ex rel v. Valentine, 49 Luz. 169.

In October 1958, Kathryn S. Hall, the divorced wife of Jonathan C. Valentine, plaintiff herein, instituted an action of habeas corpus in which she sought to obtain custody of the two children of the parties, Jonathan C. Valentine, Jr., and Frederick S. Valentine. The writ was returnable November 6, 1958.

At that time, counsel met in chambers with the hearing judge and after a conference lasting for several hours, a stipulation was placed on the record which provided, inter alia, that Mrs. Hall was to be permitted to have custody of the children on the following weekend and also for one week during the Christmas holidays. It was also stipulated that she might take the children to her new home in California, if she so desired. The stipulation further provided:

"9. Subject also to the condition that this order herein stipulated shall not become effective until a corporate surety bond in the penal sum of Five Thousand ($5,000.00) dollars conditioned for the faithful performance of all the terms and conditions of this order is first filed in the Office of the Prothonotary of the Court of Common Pleas of Luzerne County, Pennsylvania, by the relatrix, Kathryn S. Hall, after the aforesaid bond has been approved by his honor, John J. Aponick, President Judge, both as to form, sufficiency and amount."

The court entered an order approving said stipulation and retaining jurisdiction over the proceedings.

On November 7, 1958, relatrix filed a bond in the sum of $5,000, with the United States Fidelity and Guaranty Company, corporate defendant herein, as surety. This bond was duly approved by the court. The condition of that bond is as follows:

"Whereas, a stipulation of Counsel and Order of

Court was made the 6th day of November, 1958 in the proceedings entered of record in the case of Commonwealth of Pennsylvania *ex rel.* KATHRYN S. HALL versus JONATHAN C. VALENTINE, in the Court of Common Pleas of Luzerne County to No. 981 December Term, 1958.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the above bounden KATHRYN S. HALL shall faithfully perform all the terms and conditions of the stipulation of counsel and order of court made the 6th day of November, 1958 in the proceedings entered of record in the case of the Commonwealth of Pennsylvania *ex rel.* KATHRYN S. HALL versus JONATHAN C. VALENTINE, in the Court of Common Pleas of Luzerne County to No. 981 December Term, 1958, then this obligation to be void, otherwise to remain in full force and virtue."

Subsequently, a full hearing was held before the court and a decision was filed May 29, 1959, which contained an order which reads, in part, as follows (49 Luz., 180):

"Now, this 29th day of May, 1959, at 3:00 P. M., E. D. T., the custody of Jonathan C. Valentine, Jr. and Frederick S. Valentine is awarded to the respondent, Jonathan C. Valentine, Sr., subject, however, to the following rights of the relatrix, Kathryn S. Hall.:

"(1) The time between the close of school in June and the opening of school in September of each year shall be divided equally. During one-half of such time the relatrix shall be permitted to have the children with her and take them wherever she desires. The other one-half of the time, they shall remain in the custody of the respondent.

"(2) The relatrix shall be permitted to have the children for one week during the Christmas holidays and take them wherever she desires. . . .

"(5) At any time that the relatrix desires to take the said children away from the home of the respondent, she shall not do so unless she shall have first posted a surety company bond, approved by the court, in the sum of $5,000.00 conditioned that she comply with the court order and return the said children to the home of the respondent at the time specified. . . .

"(7) If the parties cannot agree on the periods of visitation, the court will enter an appropriate order."

On June 9, 1959, defendants in this case executed an endorsement to the bond previously filed, which was approved by the court. That endorsement amended the condition of the bond to read as follows:

"WHEREAS, an Order of Court was made the 29th day of May, 1959 in the proceedings entered of record in the case of the Commonwealth of Pennsylvania *ex rel* KATHRYN S. HALL versus JONATHAN C. VALENTINE, in the Court of Common Pleas of Luzerne County to No. 981 December term, 1958.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the above bounden KATHRYN S. HALL shall faithfully preform all the terms and conditions of the Order of Court made the 29th day of May, 1959 in the proceedings entered of record in the case of the Commonwealth of Pennsylvania *ex rel.* KATHRYN S. HALL versus JONATHAN C. VALENTINE, in the Court of Common Pleas of Luzerne County to No. 981 December Term, 1958, then this obligation to be void, otherwise to remain in full force and virtue; provided, however, that the liability of the Company under this bond and this bond as changed shall not be cumulative."

Mrs. Hall had custody of the children in the summer of 1959 and at Christmas in that year. On March 24, 1960, the court entered an order of modification which is not material to this litigation.

On June 11, 1960, the parties in the habeas corpus proceeding entered into a stipulation reading as follows:

"Now, June 11, 1960, it is agreed by and between KATHRYN S. HALL, relatrix and JONATHAN C. VALENTINE, Repondent, that relatrix shall have Jonathan C. Valentine, Jr., and Frederick S. Valentine from June 11, 1960 at 9:00 A. M., E. D. S. T. to July 25, 1960 at 9:00 P. M., E. D. S. T.

"This agreement is made pursuant to the decision in the above case dated and filed May 29, 1959, as modified by order of March 24, 1960, and the parties hereto intend to be legally bound thereby."

Mrs. Hall took the children from the home of the plaintiff on June 11, 1960. On the afternoon of July 25, 1960, the plaintiff received a telegram from Mrs. Hall reading as follows:

"Dear Jonathan, Jonathan and Freddie want to remain here. So they will not be returning to Sutton Rd. this evening at 9 P. M.

"Kathryn Hall."

The children were not returned on July 25, 1960, at 9 p.m., as Mrs. Hall had stipulated to do, and this action was brought to recover the amount of the bond which had been executed by defendants.

Corporate defendant filed an answer containing new matter and plaintiff is now seeking judgment on the pleadings against it, contending that the matters raised in the answer and the new matter constitute no defense to plaintiff's cause of action.

Such a motion for judgment should only be granted in clear cases: Necho Coal Company v. Denise Coal Company, 387 Pa. 567; Toff v. Vlahakis, 380 Pa. 512.

The defenses raised are five in number:

1. The bond is not a penalty bond and the only liability of corporate defendant is to pay damages actually incurred by plaintiff in the event of a default.

2. The stipulation of June 11, 1960, quoted above, is not made a part of the bond.

3. The failure to comply with the court order and the stipulation of June 11, 1960, was caused by the refusal of the children to leave the home of individual defendant and therefore she was unable to comply with the terms of the stipulation.

4. The order of the court forfeiting the bond was made without notice to corporate defendant and is premature because entered while a contempt proceeding against Mrs. Hall was pending before the court.

5. Plaintiff, having brought an action of habeas corpus in the courts of California, seeking the custody of the children, this action cannot be determined until that action is disposed of.

None of those defenses, in our opinion, have the slightest merit and are interposed solely for the purpose of delay. We shall consider them in order.

The first defense is that this is not a penalty or guaranty bond but one for which defendant is only liable for the damages actually incurred by plaintiff in the event of a default. With this we cannot agree. In the first place, both the bond and the endorsement are entitled "Compliance Bond."

The distinction between the two classes of agreements is simply that between an affirmative covenant for a specific thing and one of indemnity against damage by reason of nonperformance: Purdy v. Massey, 306 Pa. 288, 293; Weightman v. Union Trust Company, 208 Pa. 449, 451. In answering those questions, the nature of the bond should first be considered. If it is plain and unambiguous that the covenant is to do a particular thing, failure to do that thing is a breach, upon the happening of which a cause of action arises: Equitable Trust Company v. National Surety Company, 214 Pa. 159, 163. In construing a bond, the intent of the parties, the surrounding circumstances

and the particular purpose for which the bond was given, should be taken into account: Purdy v. Massey, supra; March v. Allabaugh, 103 Pa. 335.

Where the bond is given by a paid surety engaged in the business of furnishing bonds for profit, the bond is to be strictly construed in favor of the obligee: Purdy v. Massey, supra; Young v. American Bonding Company of Baltimore, 228 Pa. 373, 380; South Phila. State Bank v. National Surety Co., 288 Pa. 300, 305.

The construction of such an agreement is a question of law for the court, the facts being conceded. The only question for a jury to determine is the truth of the facts alleged: March v. Allabaugh, supra, at page 342.

Applying these principles to the state of facts before us, none of which are disputed, we unhesitatingly reach the conclusion that this is a bond of guaranty in which the amount of the bond is liquidated damages. Defendant, Kathryn S. Hall, sought custody of her children. This relief was denied her by the court, but she was given certain visitation rights upon condition that she post the bond prescribed in the order of court. What was in the mind of the court in imposing that condition is clearly expressed in the opinion where it was said, 49 Luz. at page 180:

"In our opinion, the welfare of these two boys requires that the custody be given to the respondent, subject to liberal visitation rights by the relatrix. However, because of the fact that the relatrix resides in California and this court would lose jurisdiction if the children were taken there, we think that this is an appropriate case for requiring the posting of an adequate bond before the relatrix may take the children from the respondent's home. Such requirement is general in cases of this type (Commonwealth ex rel. Bella v. Wreski, 165 Pa. Superior Ct. 6, 11; Commonwealth ex rel. Maines v. McCandles, supra) [175 Pa. Superior Ct. 157]."

It is clear that the intent of the parties and the court was that this bond was to secure the faithful performance by Mrs. Hall of her obligations under the court order, which was to return the children as agreed. These children were being taken out of the jurisdiction and all the court and respondent were interested in was getting them back. It was felt that a bond of $5,000 would be sufficient to secure their return. In that we were apparently wrong. However, that does not alter the fact that there was only one purpose in requiring the posting of this bond.

For the bonding company to now contend that they are only liable for damages actually incurred in the event of a default is an evasion, not only of the clear terms of the bond, but of the intent of the parties and this court. What damages would compensate respondent for the loss of his two children? How are such damages to be measured? Corporate defendant does not advance any idea on that except to say that it is liable only for damages actually incurred. Suppose that Mrs. Hall had placed these children out of the reach of respondent by simply disappearing with the two children. It is inconceivable that the bonding company, who was paid a premium for its services, could escape liability because no actual, monetary damages had been proved.

It is our opinion that when the children were not returned to the home of plaintiff on July 25, 1960, at 9 p.m., the liability of defendants to pay plaintiff the sum of $5,000 became fixed. We do not think that niceties of language or technicalities should be permitted to allow the defendants to escape from their solemn undertaking.

Defendants rely upon the case of United States v. United States Fidelity & Guaranty Co., 35 F. Supp. 959. That case has no bearing on the question now

before us for the reason that, by the language of the bond in that case, it was clearly one of indemnity to pay damages incurred.

The second defense pleaded is more an evasion than a defense. The court order, in paragraph 7, provided that the parties might agree on dates of visitation and if they could not do so, the court would fix the time. That order of May 29, 1959, was incorporated in the bond by reference. The parties entered into a stipulation fixing the dates and there was no necessity of it being made a part of the bond. If this corporate defendant, which has been paid for entering into this bond, were more solicitous in meeting its obligations and less interested in finding reasons to avoid liability, this defense would never have been interposed.

To the third defense there is only one answer. It was the duty of Mrs. Hall, the mother of these children, to see that they were returned in accordance with her agreement. The wishes of the children are of no importance and furnish no excuse for the failure to comply with it. Commonwealth ex rel. Lotz v. Lotz, 188 Pa. Superior Ct. 241. In that case the court said, page 245:

"The primary question before us, therefore, is whether the court below was correct in directing the mother to deliver the child to its father for visitation. Although the authority of the court to require one having custody of a child to exercise parental authority over the child to enforce visitation rights was questioned in Commonwealth ex rel. Tweedy v. Tweedy, 74 Pa. Superior Ct. 577 (1920), we feel that the court has such power. *If this were not true any child conspiring with the defendant in a custody action could completely nullify the custody order of the court.*" (Italics supplied).

Corporate defendant complains that the order of the

court forfeiting the bond was made without notice to it and while a contempt proceeding against the principal was pending before the court. Both of those matters are irrelevant. The default of the principal on the bond occurred on July 25, 1960, at 9 p.m., when she failed to return the children to Sutton Road as she had agreed to do. The order forfeiting the bond was simply superfluous and was only a judicial determination of what was already a fact. So, too, is the fact that she had not been adjudged in contempt of court. She might conceivably explain or condone her alleged contempt, but there is no escape from the fact that she and the bonding company had broken their solemn obligation to return the children at the time specified. Such fact makes the surety absolutely liable.

Corporate defendant contends that the entry of the order without notice to it is important because the action is based upon that order. This is a wholly mistaken idea and arises out of a failure to properly read the complaint. It is alleged as follows:

"9. The said Kathryn S. Hall, failed and refused to return the said Jonathan C. Valentine, Jr. and Frederick S. Valentine, as required by the Decision of your Honorable Court and the agreement aforesaid."

"10. By reason of the said conduct of the said Kathryn S. Hall, the principal amount of said bond became due and payable to Plaintiff."

The rest of the allegations of the complaint could well have been omitted. They add nothing to the cause of action which became fixed on July 25, 1960, at 9 p.m.

What we have said in the last paragraph might well be applied to the fifth defense. Whatever plaintiff may have done in California to recover custody of his children was done after the default of defendants was complete. That default occurred on July 25, 1960, at

9 p.m. In instituting that *habeas corpus* proceeding in California, plaintiff was only trying to undo what had already been done by Mrs. Hall.

In the brief of corporate defendant, it seeks leave to amend its answer to allege facts which only came to the notice of counsel after the answer was filed. These facts relate to a habeas corpus proceeding brought by Mrs. Hall in California, *prior to July 25, 1960*. She was granted, in that proceeding, custody of the children, but only pendente lite.

We are of the opinion that these facts would not constitute a defense to this action. Mrs. Hall and corporate defendant had bound themselves to return the children on a certain date. If Mrs. Hall, by her own willful act in applying to the California courts, made it impossible to comply with her agreement, she should not be allowed to take advantage of her own wrong and neither should her surety. Mrs. Hall could have returned the children on the date specified and thus saved the bonding company from liability. She then could have come into this court and asked for a modification of the order of May 29, 1959, upon a showing of changed conditions.

However, she did not see fit to adopt this orderly and legal way of proceeding. She chose to give the California courts jurisdiction so that she made it impossible to comply with the order of this court for the performance of which she had posted the bond. It is our opinion that neither she nor the bonding company can now be heard to complain and that their liability is fixed.

As the facts which defendant seeks to add by amendment would constitute no defense to plaintiff's cause of action, we see no reason for granting leave to amend.

Accordingly, the motion of plaintiff on the pleadings is granted and prothonotary is directed to enter

judgment in favor of plaintiff and against the United States Fidelity & Guaranty Company in the sum of $5,000, with interest from July 25, 1960, and costs, upon payment of the appropriate fees.