PHOENIX ASSURANCE COMPANY OF
NEW YORK, Appellant,

v.

CITY OF BUCKNER, MISSOURI, Byron
B. Crail and Housing and Home Finance
Administrator, Appellees.

No. 16901.

United States Court of Appeals
Eighth Circuit.

July 18, 1962.

Rodger J. Walsh, Kansas City, Mo.,
Linde, Thomson, VanDyke, Fairchild &
Langworthy, Kansas City, Mo., on the
brief, for appellant.

Morris H. Kross, Kansas City, Mo., Clay C. Rogers, of counsel; Rogers, Field & Gentry, Kansas City, Mo., on the brief, for appellee City of Buckner.

Jerry C. Straus, Attorney, Dept. of Justice, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., F. Russell Millin, U. S. Atty., Kansas City, Mo., and Alan S. Rosenthal and Jerry C. Straus, Attorneys, Dept. of Justice, Washington, D. C., on the brief, for appellee Housing and Home Finance Administrator.

Before SANBORN, BLACKMUN and RIDGE, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the defendants in a diversity action brought by Phoenix Assurance Company of New York to obtain a judgment declaring void a performance bond issued by it on April 19, 1956, to protect the City of Buckner, Missouri, against default in the completion of a contract it had entered into on March 30, 1956, with William A. Reser, doing business as Continental Construction Company.

The contract called for the construction of a sewer system for the City at a cost of $97,036.85. By the terms of the contract, work was to commence at a date to be specified by the City in a written notice to proceed, delivered to the contractor, and was to be completed within 300 days thereafter; the contractor was to "pay the prevailing wage rates in this district, pertaining to the trade," and to furnish a performance bond in an amount equal to the contract price, for the faithful carrying out of the contract and the payment of all persons performing labor or furnishing materials.

Reser procured the performance bond from Phoenix by paying a premium of $970.37, in consideration of which Phoenix agreed to indemnify the City for any default by Reser in the performance of his contract. The bond contained the following provision:

"PROVIDED FURTHER, That the said Surety, for value received, hereby stipulates and agrees that no change, extension of time, alteration, or addition to the terms of the contract, or the work to be performed thereunder or in the specifications accompanying the same, shall in any wise affect its obligation on this bond and it does hereby waive notice of any change, extension of time, alteration, or addition to the terms of the contract, or to the work, or to the specifications."

On March 16, 1956, before entering into its contract with Reser, the City had made written application to the Housing and Home Finance Agency at Fort Worth, Texas, requesting the Agency to purchase $150,000 General Revenue Bonds theretofore voted by the City for the purpose of constructing the sewer system. The application was accepted by the Agency on July 11, 1956, and an offer to lend the City not to exceed $150,000 for the project was made on July 18, 1956, by "United States of America, Housing and Home Finance Agency, Community Facilities Commissioner, Regional Administrator." The offer was accepted by the City on August 2, 1956. The loan agreement between the Agency and the City was subject to various terms and conditions imposed by the Agency, including the furnishing of copies of various documents, such as ordinances authorizing the issuance of the bonds, instruments relating to the proposed project, data as to all proposed wage rates, and such other data as "the Government may require." It was provided that the Government should not be obligated to the City if it proceeded with the project without having been first advised by the Housing and Home Finance Administrator that the documents furnished were in compliance with the conditions of the offer.

It was not until February 21, 1957, that the Agency advised the City that deficiencies in required paper work furnished by it had been corrected and that it was authorized to issue a notice to Reser to proceed with the work. Notice to proceed was given to Reser on

February 23, 1957, specifying February 25, 1957, as the commencement date, and December 30, 1957, as the completion date. Work on the project apparently actually began on April 26, 1957. No funds were made available to the City until April 24, 1957, when an advance of $67,630.68 was authorized by the Agency pending delivery of the City's Revenue Bonds. The advance was conditioned upon the procurement of a new performance bond or the furnishing of an opinion by the City Attorney that the bond of Phoenix was a valid and binding obligation. The advance was actually made on June 18, 1957.

The controversy as to the liability of Phoenix as surety on its performance bond in suit arose late in 1956. Phoenix had declined a request to rewrite the bond on a standard form of the Housing and Home Finance Agency. The Administrator of that Agency had been advised on December 14, 1956, by counsel for Phoenix that it considered that it had "executed no bonds for the performance of any alleged contract between the City of Buckner, Missouri, and William Reser d/b/a the Continental Construction Company." The City contended that the bond in suit was valid and binding, and so advised Phoenix and the Administrator.

Reser—who, in the performance of his contract, was employing union labor and paying union wages—had a dispute with the union and "quit the job." The City, under date of September 26, 1957, gave notice of default to Reser. Notice of termination of his contract was dated October 23, 1957. The City by letter of that date, requested Phoenix to take over and complete Reser's contract, which it did not do.

The grounds for asking that the bond in suit be declared void are summarized in the amended complaint of Phoenix (naming as a party defendant the "Housing and Home Finance Administrator, 2511 Federal Office Building, Kansas City, Missouri") as follows:

"That because of the City's inability to perform the contract at the time of making; its unreasonable delay in notifying the defendant Reser to proceed on the contract for over eleven months; the defendant Reser's assignments to creditors; and the substantial change in the prices of materials, labor and supplies; the Housing and Home Finance Administrator's contract CFA 11-55-K was a new contract that abrogated the terms of the original contract [between the City and Reser] and thereby relieved the plaintiff surety of any obligation on the original bond; the plaintiff surety executed no bonds for the Housing and Home Finance Administrator; the original contract was rescinded by the execution of the new Housing and Home Finance Administrator's contract; the original contract has been breached by the City and the Housing and Home Finance Administrator and the plaintiff's bond is null and void."

The City asserted that the bond was valid, and counterclaimed for damages of $35,472.53, allegedly caused by Reser's default.

Byron B. Crail, who had rendered services to Reser in connection with his partial performance of the sewer contract, for which Crail had not been paid by Reser, intervened and filed a counterclaim.

The Housing and Home Finance Administrator denied the allegations of the amended complaint, and asserted that he had not properly been served with summons and had no real interest in the outcome of the litigation. He asked that as to him the amended complaint be dismissed.

The action was tried to the District Court without a jury. The court determined (1) that the bond was valid; (2) that the City was entitled to recover $30,180.73 from Phoenix, and that Reser was liable to Phoenix for that amount; (3) that Crail was entitled to recover from Phoenix and Reser $1,355.05, with Reser liable to Phoenix therefor; (4) that no statutory penalty or attorney's

fees against Phoenix should be allowed; and (5) that the action as against the Housing and Home Finance Administrator be dismissed. From the ensuing judgment, this appeal was taken.

The judgment is necessarily based upon a determination by the District Court that, under applicable Missouri law, the performance bond in suit was and continued to be a valid obligation—despite the facts (1) that at the time the City contracted with Reser it did not have sufficient funds to complete the project; (2) that the City was unable for nearly eleven months to give Reser notice to proceed with the work; (3) that, in order to obtain the necessary funds from the Housing and Home Finance Agency to carry out the project, it was necessary for the City to conform to certain requirements not specified in its contract of March 30, 1956, with Reser; and (4) that Reser was in financial difficulties growing out of other construction contracts at the time he was notified to proceed.

■ The judgment represents the prediction or forecast of an experienced Missouri federal trial judge as to what the Supreme Court of that state would probably hold, were it called upon to decide a similar case. Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734. Unless it is demonstrable that his conclusion was not a permissible one because induced by a clear misconception or misapplication of Missouri law, there can be no reversal. Burkhardt v. Bates, 8 Cir., 296 F.2d 315, 316 and cases cited. The burden of demonstration is on the appellant and is a heavy one. Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43; Village of Brooten v. Cudahy Packing Company, 8 Cir., 291 F.2d 284, 288–289.

■ Phoenix was a compensated surety. "One who engages in the business of insurance for compensation may properly be held more rigidly to his obligation to indemnify the insured than one whose suretyship is an undertaking uncompensated and casual." Chapman v. Hoage, 296 U.S. 526, 531, 56 S.Ct. 333, 80 L. Ed. 370; State ex rel. Hardy v. Farris, 226 Mo.App. 1007, 1014, 47 S.W.2d 198, 201. See, also, 50 Am.Jur., Suretyship, §§ 320, 321.

■■ There is no merit in the contention of Phoenix that because the City did not, at the time it contracted with Reser for the construction of the sewer system, have the funds on hand to complete the project, the performance bond in suit was invalid. The City, in order to finance the project, had authorized the issuance of bonds, and had applied to the Housing and Home Finance Agency for their purchase. Neither Reser nor his surety could have had any illusions about how the project was to be financed or could have believed that it was to be an immediate "cash and carry" operation. Moreover, if the performance bond was invalid at the time of its execution, a return or tender back of the completely unearned premium would be a prerequisite to the maintenance of this action. Goffe v. National Surety Co., 321 Mo. 140, 150–151, 9 S.W.2d 929, 933.

■■ Phoenix contends that it was materially prejudiced by the long delay of the City in giving notice to Reser to proceed with the work—this because prices of material and labor had increased substantially in the interval, thus imposing upon Phoenix a greater risk than it was originally intended to bear— and that the provision in the bond that no change, extension of time, alteration or addition to the terms of Reser's contract should affect the obligation of the surety, is, for some reason, not apparent to us, inapplicable under the facts of this case.

The general rule relative to extension of time is stated in 50 Am.Jur., Suretyship, § 322, as follows:

> "In accordance with the rule that a surety company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance, it is held that an extension of time will not relieve a surety company on a bond unless the extension exceeds the time limited in the bond

for bringing suit thereon, or unless the surety company is thereby made to suffer material harm; and that there will be no presumption of injury unless injury is alleged and proved."

See, also, State ex rel. Hardy v. Farris, supra, pages 1013–1014 of 226 Mo.App., pages 200–201 of 47 S.W.2d; Higgins & Coufal v. Massachusetts Bonding & Insurance Co., D.C.Neb., 112 F.Supp. 390, 393. It was the obligation of Phoenix to protect the City from any default by Reser in the performance of his contract, and not the obligation of the City to protect Phoenix against loss on account of its assumption of a risk for which it was paid and which turned out badly because of Reser's lack of financial responsibility, and inability to complete his undertaking.

■ While it cannot, of course, be said with certainty that the Supreme Court of Missouri would agree with the result reached by the trial judge, the question whether the performance bond in suit was invalidated, under Missouri law, for any of the reasons given by Phoenix is one of those doubtful and debatable questions of local law as to which this Court is justified in accepting, and will accept, the views of the trial judge. See National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, cert. denied 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695.

■ The contention of Phoenix that it is entitled to visit its misfortune upon the Housing and Home Administrator has too inadequate a base to merit discussion. Assuming that he was properly served with process, his relation to the City was only that of a lender of Government funds and a purchaser of the City's Revenue Bonds. The claim against him was properly dismissed.

■ As to damages, we think that the amount determined by the trial judge is not without sufficient evidentiary support.

We find in the record on appeal no warrant for holding that the trial judge either misconceived or misapplied appli-cable Missouri law in entering the judgment appealed from. Cf. Phoenix Assurance Company of New York v. Appleton City, 8 Cir., 296 F.2d 787.

The judgment is affirmed.